CLARA A. WILCOX *vs.* JOSEPH ZANE.

Suffolk.    November 16, 1896. — January 8, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Landlord and Tenant — Negligence — Due Care — Law and Fact.*

If the roof of a tenement house is retained in the possession of the landlord as a place to be used in common by his tenants for hanging clothes, and for other uses to which the yard of a dwelling-house is commonly put, it is his duty to keep it in a reasonably safe condition for the uses for which it is intended ; and he owes to a tenant's boarder, who, at the tenant's request, goes upon the roof to do gratuitously for him work which he had a right to do there, the same duty in that respect which he owes to the tenant.

A platform covering the roof of a tenement house, the possession of which roof was retained by the landlord as a place to be used in common by his tenants for hanging clothes to dry, and for other uses to which the yard of a dwelling-house is commonly put, consisted of joists about three or four inches high laid three or four feet apart, running from the front to the rear of the building, and boards about an inch in thickness, running in the opposite direction, nailed to the joists. A tenant's servant was injured by stepping into a hole in one of the boards.

Pieces of the broken board and photographs of the platform, put in evidence at the trial of an action for such injury, showed that the board was badly decayed, and was cross-grained and knotty; and witnesses testified that no repairs had been made on the roof for more than two years. *Held*, that there was evidence from which the jury might have found that the landlord failed in the performance of his duty to keep the roof reasonably safe.

The roof of a tenement house was covered by a platform made of joists about three or four inches high, laid three or four feet apart, and boards about an inch thick nailed to the joists; and was used in common by the tenants for hanging clothes to dry, and for other uses to which the yard of a dwelling-house is commonly put. A tenant's servant went upon the roof to do work which she had a right to do there, and, while doing it in the usual way, stepped backwards without looking, and into a hole in one of the boards which was badly decayed, and was injured. In an action for such injury, she testified that she had never noticed the dangerous condition of the roof at the place of the accident. *Held*, that it could not be said, as matter of law, that there was no evidence that she was in the exercise of due care.

TORT, for personal injuries occasioned to the plaintiff, on May 18, 1894, by a defect in a platform covering the roof of a tenement house on Garfield Place, in Boston. Trial in the Superior Court, before *Hammond*, J., who allowed a bill of exceptions, in substance as follows.

It was admitted that the defendant was the owner of the building in question, and that one Parker was the defendant's agent for the letting and care of the premises.

Two photographs, taken on May 26, 1894, and two pieces of board, identified as the pieces taken after the accident from the hole into which the plaintiff fell, were put in evidence.

The plaintiff's evidence showed that she was a nurse by occupation, and since May, 1893, when not engaged, boarded with a Mrs. Pray, who occupied, as a tenant of the defendant, the tenement on the third floor of the building in question; that the building was four stories high, and contained four tenements, and there were common hallways and stairways running up to the fourth floor, and a step ladder leading from the fourth floor through a skylight, of which one side lifted up on to the roof; that at the time of hiring by Mrs. Pray, Parker told her that she could use the roof for drying clothes and other purposes in common with other tenants; that she never had any conversation with him afterwards about the roof; that once, when she was beating a carpet on the roof, he saw her, and made no objection; that the platform covering the roof con-

sisted of joists about three or four inches high laid three or four feet apart, running from the front to the rear of the building, and boards of about an inch in thickness, running in the opposite direction, nailed to the joists; that the roof was fenced around on its four sides with a railing supported by posts; and that lines were stretched for drying clothes across this roof lengthwise of the block.

The plaintiff testified that before the accident she had been upon the roof only a few times, and never noticed any unsafe condition of the platform; that there was no hole there when she went up that morning; that on the day of the accident she was getting ready to go away and work, and Mrs. Pray was not very well and was cleaning her rooms; that the witness asked her if there was anything she could do to help her before she went away; that Mrs. Pray replied, " You are younger than I am, and if you will take my rugs on to the roof and shake them for me, I will be greatly obliged"; that she took them up on to the roof and shook them, and, as fast as she finished them, threw them down the skylight on to the floor below, and in doing so had to walk around the skylight, and did not see any hole in the platform; and that, while she was beating the last rug, which hung upon a line near the skylight, and was pulling it off the line, standing with her back towards the skylight, she stepped backwards one step without looking, and fell, and her left foot went through the board, and she received the injuries complained of.

William H. Tinson testified that he occupied the top flat of the house, just over the flat occupied by Mrs. Pray; that the different floors were occupied by different families; that he had occupied that flat since June, 1893; that he was in the habit of going upon the roof, in good weather, every night, for airing and to smoke a cigar; that the boards of the platform looked well seasoned by the weather and sun, but he considered them to be in good fair condition up to the time of the accident; that he hired his flat of Parker, and in that hiring he was given the privilege of using the roof to hang clothes and for other purposes for which a yard would be used, in common with the other tenants in the building, and his family used the roof for these purposes, and that the other tenants in the building

used it for similar purposes; that, to his knowledge, while he lived there before the accident, there was no appearance that any repairs had been made upon the platform; that, within a month after the accident, Parker shut off access to the roof through the skylight by locking it up with a padlock; that on the day of the accident, about noon, he was in his apartment, and heard a noise like something falling on the roof, and immediately went up there and found the plaintiff lying unconscious, and he and his son carried her down to Mrs. Pray's apartment; that he did not notice any hole there at that time, and on the same day, about five o'clock, he went on to the roof, and observed the hole in the platform shown in one of the photographs, which was a jagged hole broken in the planking; that that hole was not there upon his visit to the roof a day or two before, and on his visit after the accident it then had the same appearance as shown in the photograph; that he subsequently took out of the hole the broken pieces of board shown in evidence; and that Parker was about the premises almost every day, and he had seen him on the roof when clothes were hung up there.

M. Luella Timson testified that she was the daughter of Mrs. Pray, and the wife of William H. Timson; that she was the first one to go upon the roof at the time of the accident to the plaintiff; that she had quite frequently been up to the roof before the accident, and was there within a day or two before the accident, and never noticed any hole in the roof; that she went upon the roof the same day after the accident; that she then saw a hole just back of the skylight, and its appearance was as though it had been broken through; and that she had no knowledge that, from July, 1893, to the time of the accident, any repairs had been made upon the roof.

Emily S. Pray testified that she hired of Parker the tenement in question in September, 1892, and moved in immediately after hiring, and lived there with her family until July, 1894; that she saw Parker about the premises almost every day, and paid her rent to him; that while she lived there she had no knowledge of any repairs being made upon the platform of the roof; that at the time of the hiring of her tenement, and in that hiring, she was allowed the use of the roof for her clothes and other purposes; and that she used it for cleaning her rugs and

hanging her clothes, in common with the other tenants of the building.

At the close of the plaintiff's evidence, the judge ruled that it was insufficient to warrant a verdict for the plaintiff; and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*E. O. Shepard*, for the plaintiff.

*S. J. Elder*, for the defendant.

KNOWLTON, J.   The evidence tended to show that the roof where the plaintiff was injured was retained in the possession of the defendant as a place to be used in common by his tenants in the building for hanging clothes to dry, and for other uses to which the yard of a dwelling-house is commonly put.   It was, therefore, his duty to keep it in a reasonably safe condition for the uses for which it was intended.   *Looney* v. *McLean*, 129 Mass. 33.   *Watkins* v. *Goodall*, 138 Mass. 533.   *Marwedel* v. *Cook*, 154 Mass. 235.   *Miller* v. *Hancock*, [1893] 2 Q. B. 177.   The plaintiff was a boarder with Mrs. Pray, one of the defendant's tenants, who, by contract with the defendant's agent, had a right to use the roof in common with others.   At Mrs. Pray's request she went upon the roof to do work for Mrs. Pray, which she had a right to do there under her contract with the defendant. Although she was working gratuitously, she was in a sense a servant or agent of Mrs. Pray, and she went upon the roof in Mrs. Pray's right.   *Barstow* v. *Old Colony Railroad*, 143 Mass. 535, 536.   The use which the tenants might make of the roof was not limited to working there in person.   The implied invitation growing out of the defendant's contract extended to the agents and servants of the tenants, who went upon the roof to do work which the tenants were authorized to do there.   The defendant had an interest in the use to which the roof was being put, for he received pay from his tenants for the privilege of so using it.   Upon the evidence in this case the defendant owed the plaintiff the same duty to have the roof reasonably safe at the time of the accident that he owed to Mrs. Pray. *Plummer* v. *Dill*, 156 Mass. 426.   *Hart* v. *Cole*, 156 Mass. 475.

There was evidence from which the jury might have found that he failed in the performance of this duty.   It is clear that it was not necessary to have a very strong floor, for if one broke

through it his foot could not descend more than about four inches before it would be stopped by the roof below. As the danger of injury was small if a board broke, a greater risk of breaking was allowable than if a break would be likely to be attended by serious consequences. But there was evidence that the board which broke was badly decayed, and was cross-grained and knotty, and that no repairs had been made on the roof for more than two years. We think that the pieces of broken board which were in evidence, the photographs, and the testimony of the witnesses, presented a question for the jury on this branch of the case.

We cannot say, as matter of law, that there was no evidence that the plaintiff was in the exercise of due care. She testified that she had never noticed the dangerous condition of the roof at the place of the accident, and she was in the performance of her duty in the usual way. She had no such duty to observe the condition of the roof in regard to safety as the defendant had.                                        *Exceptions sustained.*