PRAHAR v. TOUSEY.

(Supreme Court, Appellate Division, Second Department. April 22, 1904.)

1. LANDLORD AND TENANT—CONDITION OF PREMISES—LIABILITY OF LANDLORD.
    The lessee of real property must run the risk of its condition, unless he has an express agreement by the lessor covering that subject.

2. FRAUD—REPRESENTATIONS IGNORANTLY MADE.
    A person who, for the purpose of inducing another to contract with him, states on his personal knowledge a material fact without having knowledge whether the statement is true or false, or reasonable ground to believe it true, is guilty of fraud if the statement is relied on, and subsequently found to be false, though he had no actual knowledge that it was untrue.

3. SAME—BURDEN OF PROOF.
    In an action on contract, fraud is an affirmative defense, and must be proved.

4. SAME—SUFFICIENCY OF EVIDENCE.
    In an action on a lease, in which defendant claimed that the execution of the lease was procured by fraudulent representations of the lessor that the building was adapted to the purposes for which the lessee desired to use it, evidence considered, and *held* not sufficient to justify submission to the jury of this issue.

5. SAME—DEFECTS EXISTING AT TIME OF LEASE.
    Laws 1860, p. 592, c. 345, providing that a tenant is not liable for rent after a building has become untenantable by any cause without fault of

---

¶ 1. See Landlord and Tenant, vol. 32, Cent. Dig. § 629.

the tenant, does not apply where the defect existed when the lease was made, and no fraud or misrepresentation on the part of the landlord is shown.

Appeal from Trial Term, Kings County.

Action by Louis B. Prahar against Rosalie Tousey, as executrix of the will of Frank Tousey, deceased. From a judgment for plaintiff for a portion of his demand, he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

John E. Brodsky, for appellant.
James M. Hunt, for respondent.

WOODWARD, J. On the 11th day of December, 1900, the plaintiff, as the owner of a factory building at 124 to 130 Pearl street, borough of Brooklyn, entered into a written contract with the defendant's husband, Frank Tousey, by the provisions of which the plaintiff leased to the said Frank Tousey certain floors of the factory building, to be used as a printing office, for a period of five years from the 1st day of February, 1901. Mr. Tousey began moving his printing office in January, 1901, and was fully installed, and had been operating his plant for several weeks before the close of the month of February, at which time, by order of the department of buildings, he was compelled to stop running his presses; this order being subsequently modified so that a portion of the presses were permitted to run, some of them at a reduced rate of speed. Matters remained in this situation for about one year, when Mr. Tousey, having in the meantime constructed a building of his own, removed from the plaintiff's premises. Mr. Tousey subsequently died, and this action is brought against his executrix to recover the rent due under the terms of the lease for the months of February, 1902, to and including March, 1903. The answer alleges fraud in the inception of the lease contract, and the verdict of the jury allows the plaintiff $194, this being evidently for a portion of the month of February, 1902, which it was conceded had not been paid for, though occupied by Mr. Tousey. This verdict, while nominally for the plaintiff, is, in effect, in favor of the defendant's theory of fraud in the making and delivery of the contract, and the question has been properly raised whether there was evidence which entitled the defendant to go to the jury upon the question of fraud, and this is the broad question presented by the plaintiff's appeal from the judgment and from the order denying plaintiff's motion for a new trial upon the minutes.

The amount claimed in this action—something over $8,000—with the unexpired term to be governed by the decision in this case, involving about $28,000, which fact was called to the attention of the jury by the learned justice presiding at the trial, appeals strongly to the abstract sense of justice, under the facts appearing in this case, and renders necessary a careful examination of the evidence. It is important to bear in mind that while it seems hard to impose a burden of $28,000 upon Mr. Tousey's estate, for which there can be only a partial return, under the duty of the landlord to make the loss as small as may be within reasonable limitations, there are important considerations of public

policy to be borne in mind in adjudications of this character. The gravamen of the defense is fraud. Fraud is, in its essential elements, a crime, and we ought not lightly to convict a man of fraud for the purpose of relieving others of the obligations which they have voluntarily assumed in their contracts. The law surrounds contracts with special protections against interference even by the sovereign power, and it is of the greatest importance that the mutual and lawful obligations of persons qualified to enter into contracts should be observed, and that they should be construed and the law administered within well-defined rules, "not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plow." Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, quoting Cooley's Constitutional Limitations (5th Ed.) 484, 486.

It is uniformly held in this state that the lessee of real property must run the risk of its condition, unless he has an express agreement on the part of the lessor covering that subject. The tenant hires at his peril, and a rule similar to that of caveat emptor applies, and throws on the lessee the responsibility of examining as to the existence of defects in the premises and of providing against their ill effects. Franklin v. Brown, 118 N. Y. 110, 115, 23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744. The same case cites, apparently with approval, O'Brien v. Capwell, 59 Barb. 497, 504, to the effect that, "as between landlord and tenant, * * * when there is no fraud or false representations or deceit, and in the absence of an express warranty or covenant to repair, that there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in a safe condition for use." See Daly v. Wise, 132 N. Y. 306, 30 N. E. 837, 16 L. R. A. 236. The learned justice presiding, in harmony with this rule, charged the jury that, as the lease contained no covenants in respect to the condition or adaptability of the premises, they could not find for the defendant upon anything contained in the contract, but submitted to them the question of whether there was fraud in the negotiations looking to the execution and delivery of the lease, and the question presented is whether the evidence justifies such a submission.

The defendant's theory, as set forth in her answer, was that Frank Tousey was engaged in operating a printing establishment in the borough of Manhattan; that he was obliged to use heavy presses, to be operated at a high rate of speed; that this fact was known to the plaintiff at the time of entering into the contract; that the plaintiff examined the machinery and plant "for the purpose of discovering and advising the said Frank Tousey as to whether or not the buildings Nos. 124 to 130 Pearl street, in the borough of Brooklyn, were sufficiently strong to carry the said machinery while the same was in operation, and to operate which the plaintiff was to furnish the power as specified in the said lease"; that after making the examination the "plaintiff represented to said Frank Tousey that the premises Nos. 124 to 130 Pearl street, in the borough of Brooklyn, were sufficiently strong to carry the plant and machinery of the said Frank Tousey, and to permit of the operation of the same; and the said Frank Tousey, upon receiving such repre-

sentations, and relying thereupon, entered into the lease hereinbefore
referred to"; that the said Frank Tousey moved into the plaintiff's
premises, placed his machinery, etc., and that the building proved to be
too weak to support such machinery when operated at the high rate
of speed demanded by his business; that the "representations made
to the said Frank Tousey as hereinbefore set forth were vital to the
transaction, and were made with the intent that said Frank Tousey
should act upon the same; that said Frank Tousey did act upon the
same, and that they were false, and were known to the plaintiff to be
false, and said Frank Tousey was injured thereby." The answer fur-
ther alleges the removal, and sets up a counterclaim for the expense
necessary in such removal; but this was not strongly urged, and the
charge of the learned justice presiding practically took that question
from the jury. If the allegations of the answer were true; if there
was evidence from which the jury might properly draw the inference
that the plaintiff, with intent to deceive and mislead Mr. Tousey, rep-
resented that the building and the premises demised were adequate for
the purpose, and that Mr. Tousey entered into the contract relying en-
tirely upon these representations, and these representations, made upon
the personal knowledge of the plaintiff, proved to be false—the judg-
ment might rest upon solid foundation; but we read the record in vain
for evidence supporting these material allegations. The nearest ap-
proach to evidence to support the allegations of the answer is found in
the testimony of St. Clair Tousey, a brother and employé of the late
Frank Tousey. He testifies that in the latter part of November, 1900,
he and his brother, the lessee, visited the demised premises; that the
plaintiff and Mr. Blank, the plaintiff's foreman in the factory, which oc-
cupied the lower floors, were present, and that during the conversation
the witness, who is a stranger to the contract, explained to Mr. Blank
that they had heavy presses, and asked him about the strength of the
floors, and that Mr. Blank replied, "Mr. Tousey, these floors are strong
enough to hold your presses," and that Mr. Blank further said, "We
have a very heavy machine on the top floor," and asked the witness
to go up and look at it, but the witness declined, saying that he did
not think it necessary as long as he thought the floors were strong
enough. On his cross-examination Mr. Tousey says that on the "day
that I and my brother went over in the month of November, when I
say my brother called upon Mr. Prahar, I had no conversation with
Mr. Prahar. I addressed no conversation to Mr. Prahar at all. The
conversation I testified to was with Blank. This conversation took
place on the third floor of Prahar's building." It thus appears that,
aside from the general statement of this witness that all four were
present at the time of this alleged conversation, there is no evidence
that either Mr. Prahar or Frank Tousey heard this alleged declaration
of Mr. Blank that "these floors are strong enough to hold your presses."
This is the only direct evidence in the case of any representations on
the part of any one that this building was adapted to the uses for
which Frank Tousey rented the premises. Both Mr. Blank and Mr.
Prahar positively dispute Mr. Tousey in respect to the presence of
the plaintiff at this time, but we must assume that the jury has resolved
this point in favor of the defendant. There is, however, no contra-

diction of the testimony of both the plaintiff and Mr. Blank that the latter was the foreman of the plaintiff's factory, and had no authority whatever to deal with the plaintiff's real property, and the verdict in this case rests upon the testimony that in a conversation between St. Clair Tousey and Mr. Blank, neither of whom had any legal interest in the contract or the premises, the latter stated, not that the building was safe for the purposes for which Frank Tousey desired it, but that the "floors were strong enough to hold your presses."  There is not the slightest evidence to show that the attention of either the plaintiff or Frank Tousey was called to this conversation between St. Clair Tousey and Mr. Blank, which might easily have been carried on without attracting attention between the contracting parties.  But assuming that all four persons were present, and heard the conversation alleged, was the plaintiff in this action bound to dispute the mere opinion of Mr. Blank that the "floors are strong enough to hold your presses"?  There is no evidence that the plaintiff knew of the inherent defects in the building generally which made it unfit for the operation of the presses of the lessee, and the undisputed evidence is that the floors were strong enough to hold the presses, and that they did hold them for a period of over one year, during five or six weeks of which time they were operated at full speed, or at least at the speed which the lessee saw fit to use, and during the remainder of the time a portion of the presses were operated at full speed, while others were required to be reduced in motion.  But they all remained there, and the floor held them for over one year, and there is no evidence that it would not have held them for the entire term.  It was only because of the vibrations produced in the building generally, and which endangered the structure, that the public authorities, at the request of the plaintiff, examined the building, and ordered the limitations upon the lessee, who covenanted in his lease to "make all repairs to the demised premises at his own cost and expense, and will comply with all orders, regulations, ordinances, rules, etc., of any department or board of the city of New York," etc.  The statement of Mr. Blank, under the circumstances developed by the evidence, is the only one made by any one who by any possibility could be said to represent the plaintiff in reference to the demised premises.  There is not a particle of evidence that either the plaintiff or Mr. Blank knew or had reason to believe that the building was not strong enough to support the amount of machinery which St. Clair Tousey says he described to Mr. Blank, and the fact that the plaintiff occupied personally the lower floors, and permitted the machinery to be operated without protest for five or six weeks, is persuasive evidence that he had confidence in the building, and did not believe that it would fall down about his own ears.

The undoubted rule is that where a party, for the purpose of inducing another to contract with him, states on his personal knowledge that a material fact does or does not exist, without having knowledge whether the statement is true or false, and without having reasonable grounds to believe it to be true, is liable in fraud if the statement is relied on, and is subsequently found to be false, although he had no actual knowledge of the untruth of the statement.  Daly v. Wise, 132

N. Y. 306, 312, 30 N. E. 837, 16 L. R. A. 236, and·authorities there
cited.   But fraud is an affirmative defense, and must be proved.   Cham-
berlayne's Best on Evidence, 308, and authorities there cited.   It must
be shown that the plaintiff or his agent made a statement on his per-
sonal knowledge, without having reasonable grounds to believe it to
be true, and that the statement subsequently proved to be false, to
the injury of the defendant.   It certainly does not appear by the evi-
dence in this case that Mr. Blank or the plaintiff did not have rea-
son to believe that the "floors are strong enough to hold your presses."
The building, so far as the evidence shows, was strong enough to
hold other heavy machinery which Mr. Blank offered to show.   It
·was in evidence that at the time Frank Tousey and his brother, the
witness, were present, looking over this building, there were notices
displayed upon the several floors, giving the weight which the several
floors were capable of sustaining, the calculations being made by the
department of buildings, and there is no evidence that the weight
upon the press floor was greater than that authorized, or that the plain-
tiff had any reason at that time to apprehend that the·weight would
be greater.   St. Clair Tousey testifies that when they examined these
premises they looked at each of the three floors, and that no one pre-
vented them from examining the place as often as they desired.   The
plaintiff testifies that at the time of the examination the timbers of the
building could be seen, so that the lessee had as good an opportunity
of judging of the building as the plaintiff; and, it not being shown
that the plaintiff knew of any inherent defects in the building, it is diffi-
cult to understand how he could owe any duty to dispute the mere
statement of opinion made by the foreman of his factory to St. Clair
Tousey in the latter part of November.

The lease was not executed until the 11th day of December, and
to give plausibility to the theory that the plaintiff had made misrepre-
sentations in respect to the capacity of the building, St. Clair Tousey
testified that after the conversation above discussed, and early in De-
cember, 1900, "I saw Mr. Prahar at my brother's office building in
Union Square.   I saw Mr. Prahar and my brother leave that office
together on that day.   It was about noontime."   Then one Charles
E. Salmon was called as a witness.   He was an employé of Frank
Tousey, and he testified that early in December, 1900, the plaintiff
came to the printing office of Frank Tousey, in company with the
latter, during the lunch hour; that he was eating his lunch on the same
floor as the presses, and that the plaintiff and Mr. Tousey passed
around the room among the presses, and that the·witness heard the
plaintiff say, "Yes, I know all about machinery," and the plaintiff
admits:   "I did make the remark that I knew all about machinery.
I do know all about machinery, but know nothing about presses.
There is quite a difference between machinery and the presses there.
I am in the habit of running machinery in my line of business, but
not presses."   The evidence is furnished by the defendant, and is
not disputed, that the presses were not running at this time, and
there is absolutely no evidence that the plaintiff visited the printing
establishment for the purpose of examining the plant and advising
Frank Tousey, or for any other definite purpose.   So far as appears,

it may have been mere idle curiosity. There is certainly no evidence in the case that the plaintiff ever made any misrepresentations as to the capacity or strength of the building subsequent to his visit to the plant of Frank Tousey, or that Mr. Blank ever made any such representations after the original interview in November; and, while there is some additional testimony as to the plaintiff's visit to the plant while it was yet in the borough of Manhattan, there is none throwing any light upon the alleged representations of the plaintiff in respect to his own building, and the case comes right back to the alleged statement of the plaintiff's foreman to St. Clair Tousey, and we are clearly of opinion that this did not establish fraud on the part of the plaintiff. The contract was not made for at least 12 days after this alleged conversation. It makes full provision for all of the details of the transaction, including an arrangement for power; and, so far as we can discover from the evidence, it was made under such circumstances that the question should have been disposed of as one of law, upon the plaintiff's motion for the direction of a verdict. In Daly v. Wise, 132 N. Y. 312, 30 N. E. 837, 16 L. R. A. 236, where a much stronger representation was conceded to have been made by an agent, the court say:

"It does not appear that the plumbing had not been fixed as stated, nor that the statement that 'it was all in good condition' was made without actual or supposed knowledge of its condition, nor that it was made in bad faith, and we think the case does not fall within the principle of the authorities last cited."

The suggestion of the respondent that the judgment may be sustained under the provisions of chapter 345, p. 592, of the Laws of 1860, incorporated into the real property law, is without force, as the statute does not apply to a case where the defect existed when the lease was made, and no fraud or misrepresentation is shown on the part of the landlord, or when it results from the neglect of the tenant to make ordinary repairs, or from deterioration due to the ordinary use by the tenant. Meserole v. Hoyt, 161 N. Y. 59, 61, 62, 55 N. E. 274, and authorities there cited.

The judgment and order appealed from should be reversed, and a new trial granted, under the rule recognized in Sherman v. Ludin, 79 App. Div. 37, 79 N. Y. Supp. 1066.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur