[No. 10974.   Department Two.   September 5, 1913.]

# J. E. HOWARD et al., *Respondents*, v. WASHINGTON WATER POWER COMPANY, *Appellant*.[1]

LANDLORD AND TENANT — DEFECTIVE PREMISES — NEGLIGENCE—IN-JURY TO TENANT—LIABILITY.  The rule of *caveat emptor* does not apply, and the landlord is liable as for a tort, without any agreement on his part to repair, where the tenant sustained an electric shock through a defective and uninsulated electric light switch, where the defect was actually known to the landlord and not disclosed or known to the tenant.

SAME—LIABILITY OF LANDLORD FOR DEFECTS — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  Whether a landlord was guilty of negligence in renting property with actual knowledge of a defective light switch, and whether the tenant was guilty of contributory negligence in failing to discover the defect on inspecting the premises, is for the jury, where a former tenant testified that he had notified the landlord's agent of the defective condition of the electric apparatus and that it had notice of the exposed condition of the switch in question, which was behind the front door, and the evidence was conflicting as to whether the defect was so obscured that it would not be discovered by a prospective tenant in the exercise of reasonable care.

SAME—ACTIONS—PLEADINGS—COMPLAINT.  In an action for the negligent renting of premises in which there was a defective electric light switch, an allegation that the defendant knew that the switch was exposed and dangerous is fairly inferable from a complaint alleging that the defendant was negligent in causing or permitting the electrical wires to be exposed and unprotected and in failing to give the tenant warning of the condition.

TRIAL—OBJECTIONS—WAIVER.  Error cannot be predicated upon the submission of an issue which was fairly inferable from the allegations of the complaint, where there was no objection to the complaint except by general demurrer submitted without argument; and on objection made to the introduction of the evidence in question as outside the issues, the court ruled that it was reasonably within the issues, in which ruling the appellant acquiesced by saying "all right" and made no claim of surprise or prejudice; since an amendment would doubtless have been made.

TRIAL—INSTRUCTIONS—CHARGE AS A WHOLE.  Error cannot be predicated upon an isolated instruction, when, taken as a whole, the instructions clearly state the law applicable to the evidence.

[1]Reported in 134 Pac. 927.

APPEAL—REVIEW—HARMLESS ERROR. In an action for personal injuries, error in the admission of evidence of permanent womb trouble, where there was no allegation thereof in the complaint, is harmless where the court expressly withdrew that issue from the consideration of the jury; especially where its only effect would have been to augment the recovery, and the court ordered a new trial unless the plaintiff submitted to a substantial reduction of the verdict.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 28, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, for personal injuries from electric shock. Affirmed.

*Post, Avery & Higgins,* for appellant.
*Morrill, Chester & Skuse,* for respondents.

ELLIS, J.—This is an action for personal injuries claimed to have been suffered by the plaintiff Lottie M. Howard through coming in contact with an exposed electric light switch in a house which the plaintiffs had rented from the defendant.

The complaint alleges that the defendant was the owner of an electric light plant, in the city of Spokane, and was engaged in furnishing to the residents of the city electricity for lighting and other purposes; that the defendant owned the residence in which the plaintiffs were living; that the house was wired for the purpose, and was lighted by electricity furnished by the defendant on usual terms to its customers and paid for by plaintiffs; that, in the front hall near a window, and four or five feet from the floor, in a small opening in the wall, had been placed an electric attachment, the wires or appliances of which had been exposed, uninsulated and unprotected, but were not such as to attract attention; that, on the 8th day of March, 1912, while the plaintiff Lottie M. Howard was engaged in washing the wall and window, her hand came in contact with the exposed electric wire or apparatus, the existence and location of which were unknown to her, and therefrom she received a severe electric shock

which threw her on the floor and across a bucket where she lay unconscious until found by her husband; that, at the time, she was pregnant, and that she suffered a miscarriage that night, and sustained other injuries by reason of the shock and fall.   The complaint further alleges:

"That defendant was guilty of negligence in causing or permitting said electrical wires to be charged with such a dangerous current of electricity and in allowing the same to be exposed and unprotected, as hereinbefore mentioned, and in failing to give plaintiffs any warning of such condition, it being well known to defendant that plaintiffs knew nothing about electricity, electrical appliances or the danger arising from the conditions hereinbefore mentioned."

A general demurrer to the complaint was overruled on submission without argument.   The answer put in issue the allegations of negligence, interposed the defense of contributory negligence, and alleged that, under the rental agreement, the tenants undertook to fix, adjust, and install electric wires for lighting.   The affirmative allegations of the answer were traversed by the reply.

The evidence shows that, in the latter part of December, 1911, the plaintiff husband opened negotiations with a rental agency for renting the house in question; that, afterwards, the plaintiff wife, with a friend, visited and examined the house, and that thereafter an arrangement was made between the plaintiffs and the defendant's agent whereby the plaintiffs rented the place, and because of its condition were to receive the first month's rent free, the first payment being then made for the second month's rent.   There is some conflict in the evidence as to just what the agreement was; the plaintiffs claiming that they were merely to repair certain windows and clean the house; the defendant claiming that, in consideration of the first month's rent, the plaintiffs were to make all necessary repairs to the house.   There was however, neither definite claim nor clear proof that the defendant agreed to make any repairs.   After taking possession of the

house, the plaintiffs cleaned part of it and made some repairs. The front part of the house had not been cleaned. They intended to let certain rooms, and on the day in question Mrs. Howard was cleaning the front hall. In the hall, on the left side of the front door and near to a narrow window behind the door, was an ordinary switch for the purpose of turning off and on an electric light on the porch. The cap or covering from the top of this switch, and also the button, had been removed. Mrs. Howard testified that, about five o'clock in the afternoon of March 8, 1912, she was washing the casing about the door and window mentioned, and that, while so doing, she placed her hand on this exposed switch; and the floor being wet, she received an electric shock which caused her to fall across a pail filled with water which she was using. She also testified that she was pregnant, and that the accident caused a miscarriage that night.

There was no witness to the accident, but her husband testified that he found her about ten or fifteen minutes after five o'clock lying unconscious upon her stomach across the pail. Two doctors testified that, from symptoms a short time after the accident and from certain examinations, they were both satisfied that a miscarriage had actually occurred. Both testified that there was nothing unusual in the symptoms, that the miscarriage was complete and the symptoms satisfactory from a physician's point of view. A former tenant, who had occupied the premises shortly before it was rented to the plaintiffs, testified that the electric apparatus in the house was all badly out of repair, and that he had repeatedly called the attention of defendant's agent to this condition. He also testified rather vaguely that the agent had been notified of the exposed condition of the switch in question which was located behind the front door. Notice of any kind was denied by the defendant's agent. One expert electrician testified that, under the conditions, wet hand, wet floor and live exposed wires, when the hand was placed so as to touch both wires, the electrical current would pass through

the entire body. Another expert testified that, under these conditions, the current would only pass through the hand. The latter also testified that, three or four days after the accident, he tested the current in the exposed wires and found it only 97 volts and that such a current would cause but a slight shock and no injury. There was no evidence, however, that the current was of the same strength at the time of the test as it was at the time of the accident. The trial resulted in a verdict against the defendant for $3,000. The appellant moved for judgment notwithstanding the verdict, or in the event that was denied, for a new trial. The court denied the first motion, and overruled the motion for a new trial on condition that the plaintiffs accept a judgment for $2,000. The condition was accepted, and judgment was entered for that amount. The defendant has appealed.

It is contended that no liability on the appellant's part for the accident was shown, either by facts pleaded or by evidence adduced, because the landlord did not agree to repair. It is a general rule that, without an express contract to the contrary, a tenant takes the demised premises as he finds them and that there is no implied warranty on the landlord's part that they are safe or even fit for the purpose for which they are rented. The rule *caveat emptor* applies. In the absence of fraud or active deceit, where the action is upon the contract or for its rescission, or for damages in lieu thereof, this is a rule of almost universal application. There can be no question that, if this were an action upon the contract, there could be no recovery, since the landlord did not agree to make any repairs. This however, is not an action upon the contract. It is not an action for damages for failure to repair. It is an action for a tort— for a negligent breach of duty which, in any case, without regard to the terms of the contract, the landlord owes to the tenant. The duty .is a legal incident to the creation of the relation of landlord and tenant independent of the terms, either expressed or implied, of the contract creating it.

Where there are obscure defects dangerous to the life, health, or property of the tenant, existing and known to the landlord when the lease is made, but unknown to and unappreciated by the tenant, and which a reasonable, careful examination on his part would not discover, it is the duty of a landlord to disclose them that the tenant may either decline the premises or guard against the defects. The failure to disclose such defects or dangers is culpable negligence. It constitutes a well recognized exception to the general rule of non-liability of the landlord in the absence of a warranty against defects or an agreement to make repairs. The rule *caveat emptor* rests in contract as an implied assumption on the tenant's part of the risks of all obvious defects or conditions affecting the safety or fitness of the premises. It can never be invoked to condone a tort. . The general rule and the exception have been well and comprehensively stated as follows:

"On the owner's entire surrender of control over premises to a lessee, he is, in the absence of any warranty of their condition or fraudulent concealment of known defects or agreement to repair, on his part, free from liability to the lessee and to those whom the latter invites upon the premises, for defects which could have been discovered by the lessee, on reasonable inspection, at the time of hiring. In other words, if the lessee has the same opportunities as the owner to discover a defect, at the time of leasing, the rule of *caveat emptor* applies, and he takes the premises as he finds them. There is, therefore, no implied warranty on the part of a lessor that the premises are safe or reasonably fit for occupation. Where, however, there is some latent defect, *e. g.*, an original structural weakness, or decay, the presence of an infectious disease, or other injurious thing rendering the occupation of the premises dangerous, which were known to the lessor, and were not known to the lessee, nor discoverable by him on reasonable inspection, then it was the duty of the lessor to disclose the defect, and if an injury results therefrom, he is liable as for negligence." 3 Shearman & Redfield, Negligence (6th ed.), § 709.

It will be observed that the exception to the rule so stated does not place upon the landlord any greater duty of inspec-

tion in the absence of warranty or covenant to repair than it places upon the prospective tenant. It imposes no active diligence upon the landlord to discover and disclose obscure defects or dangers, but it does impose a duty to disclose such as are known to him at the time and not likely to be discovered by a reasonably careful inspection by the tenant. The rule and the exception so limited to actual knowledge, are sustained by the decided trend of the authorities. *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778; *Cowen v. Sunderland*, 145 Mass. 363, 14 N. E. 117, 1 Am. St. 469; *Coke v. Gutkese*, 80 Ky. 598, 44 Am. Rep. 499; *Martin v. Richards*, 155 Mass. 381, 29 N. E. 591; *Anderson v. Hayes*, 101 Wis. 538, 77 N. W. 891, 70 Am. St. 930; *Edwards v. New York & H. R. R. Co.*, 98 N. Y. 245, 50 Am. Rep. 659; *Kern v. Myll*, 80 Mich. 525, 45 N. W. 587, 8 L. R. A. 682.

The respondents contend for a broader exception to the general rule, and claim that the landlord should be held liable, not only for the failure to disclose obscure defects actually known to him at the time of the lease, but also for the failure to exercise reasonable care to discover such obscure defects and divulge them. There is but one court to which our attention has been called which has committed itself to so broad an application of the exception. The supreme court of Tennessee has sustained a liability in the absence of actual knowledge in the following cases: *Hines v. Willcox*, 96 Tenn. 148, 33 S. W. 914, 34 S. W. 420, 54 Am. St. 823, 34 L. R. A. 824; *Willcox v. Hines*, 100 Tenn. 538, 46 S. W. 297, 66 Am. St. 770, 41 L. R. A. 278; *Stenberg v. Willcox*, 96 Tenn. 163, 33 S. W. 917, 34 L. R. A. 615. The exception is also thus broadly stated in 2 Wood, Landlord and Tenant (2d ed.), p. 855, but the authorities generally, as it seems to us, fail to sustain a liability in the absence of actual knowledge of the defect on the landlord's part. An exception so broad as that claimed would practically abrogate the general rule and cast the whole burden of reasonable inspection upon the land-

lord notwithstanding the fact that he had refused to warrant the premises or to covenant to repair.

The respondents also cite a number of authorities which it is claimed support the broader application of the exception, but an examination convinces us that they fall within another exception; which is that, where the landlord lets premises to several tenants and retains control of any part of the premises, either for his own use or for that of all of the tenants in common, such as a roof for drying laundry, common passageways and stairways, he is liable not only for damages resulting from defects known to him at the time of the lease, but also for those which should have been known to him by the exercise of reasonable care and inspection. *Baird v. Shipman,* 132 Ill. 16, 23 N. E. 384, 22 Am. St. 504, 7 L. R. A. 128; *Wilcox v. Zane,* 167 Mass. 302, 45 N. E. 923; *Lindsey v. Leighton,* 150 Mass. 285, 22 N. E. 901, 15 Am. St. 199.

On the other hand, the appellant contends, if we have correctly caught counsel's meaning, that, in the absence of an express warranty or covenant by the landlord to repair, the exception to the rule *caveat emptor* extends no further than to permit a recovery against the landlord for injury resulting from obscure defects in case of actual fraudulent misrepresentation or active deceit, and not to cases of mere passive failure to disclose known defects or dangerous conditions, however obscure. Some of the authorities cited by the appellant contain language which seems to support that view, but an examination discloses the true ground of decision in each case to have been either that the defect was such that the court could say, as a matter of law, was so patent that reasonable care on the tenant's part would have discovered it, or upon the ground that the defect arose after the tenancy had commenced. In such cases, of course, the remedy, if any, is upon the contract and not for a tort. *Land v. Fitzgerald,* 68 N. J. L. 28, 52 Atl. 229; *Doyle v. Union Pac. R. Co.,* 147 U. S. 413; *Bertie v. Flagg,* 161 Mass. 504, 37 N. E. 572. The other authorities cited by the appellant recognize

the exception as we have stated it, the decision in each instance resting upon the peculiar facts of the case, which, in the opinion of the court, took it out of the operation of the exception; such as lack of knowledge of the defect on the landlord's part at the time of the making of the lease; dangers created by the acts of third persons, or defects arising after the lease was made. *Franklin v. Brown*, 118 N. Y. 110, 23 N. E. 126, 16 Am. St. 744, 6 L. R. A. 770; *Prahar v. Tousey*, 93 App. Div. 507, 87 N. Y. Supp. 845; *Towne v. Thompson*, 68 N. H. 317, 44 Atl. 492, 46 L. R. A. 748; *Dustin v. Curtis*, 74 N. H. 266, 67 Atl. 220, 11 L. R. A. (N. S.) 504; *Ward v. Fagin*, 101 Mo. 669, 14 S. W. 738, 20 Am. St. 650, 10 L. R. A. 147; *Bennett v. Sullivan*, 100 Me. 118, 60 Atl. 886; *Roberts v. Cotty*, 100 Mo. App. 500, 74 S. W. 886; *Coats v. Meriwether*, 144 Mo. App. 89, 129 S. W. 468; *Franklin v. Tracy*, 117 Ky. 267, 77 S. W. 1113, 78 S. W. 1112, 63 L. R. A. 649.

A painstaking examination of the authorities cited and many more, induces the conviction that the exception to the rule of nonliability of the landlord for injuries arising from defects existing at the time the lease was made, in the absence of warranty or express agreement upon his part to repair, can soundly be extended only to injuries resulting from a failure of the landlord to disclose those obscure defects not known to the tenant and not discoverable by a reasonably careful examination on his part, but actually known at the time to the landlord.

Upon the evidence, which we have briefly summarized in our statement and which we deem unnecessary to review in greater detail, every question of fact was for the jury under proper instruction. It was for the jury to say whether the uncovered switch was a defect so obscure as not to be discovered and its dangers appreciated by the tenant in the exercise of reasonable care such as to be expected from an ordinarily prudent person examining premises as a prospective tenant. It was for the jury to say whether the appellant actually knew of

the defective switch and negligently failed to disclose the defect to the respondents.    In short, the action was one for negligence, the defense was contributory negligence and the evidence was conflicting on both questions.    We cannot say, as a matter of law, that, upon the evidence, the minds of reasonable men might not differ as to either question.

The appellant insists that the court in outlining the issue · in his instructions erred in stating that the plaintiffs "say that the defendant knew that the switch was exposed and dangerous." Though a direct allegation of such knowledge is not found in the complaint, we think the charge of such knowledge is fairly inferable from the allegations which we have outlined and in part quoted in our statement of the case. Under the rule announced in *Gibson v. Chicago, M. & P. S. R. Co.*, 61 Wash. 639, 112 Pac. 919, and followed in *McLeod v. Chicago, Milwaukee & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749, we think the issue was sufficiently presented, especially in view of the fact that the demurrer to the complaint was general and was submitted to the court without argument and that no objection was made to the introduction of any evidence for lack of this necessary allegation in some form. Moreover, the point was waived.    When the evidence was introduced tending to show such knowledge, counsel at first objected that notification of the defect by a prior tenant was immaterial and not within the issues, the court ruled that the evidence was "reasonably within the allegations of the complaint."    Counsel for appellant said: "This is to prove the knowledge of the condition by Mr. McIntosh," (appellant's agent) and counsel for the respondents answered, "Knowledge of the defendant," to which appellant's counsel rejoined, "All right," closing the incident.    Thereafter the trial proceeded apparently upon the theory that the complaint charged such knowledge.    Had the appellant then urged the objection, no doubt an amendment would have been permitted.    Not having done so, and no surprise or prejudice

at the trial being shown, we find no prejudicial error in the instruction.

It is also claimed that the court erred in an instruction by which the jury was told that, in case it found that the appellant let the house to the respondents knowing the danger and failed to disclose it, such failure would be negligence, rendering the appellant liable, the objection being that this particular instruction did not define the degree of care incumbent upon the respondents. The court had, however, already fairly and concisely instructed the jury to the effect that, if it found that the appellant did not know of the alleged defective condition, there could be no recovery and that, if the respondents did know or by the exercise of reasonable inspection and investigation should have known of it, then the jury should find for the appellant. We have often held that reversible error cannot be predicated upon isolated parts of the charge. Taken as a whole, the instructions clearly stated the law applicable to the evidence.

One of the physicians who attended the injured woman testified that there was a retroversion of the uterus, and that an operation would probably be necessary to restore it to its normal condition. The evidence was slight, if any, that the condition resulted either from the fall or from the miscarriage. The physician was further permitted to testify, over objection, that such an operation would be both painful and expensive. There was no claim in the pleadings of damages for such probable expense. The evidence was improperly admitted. The court however, instructed the jury as follows:

"I charge you that you cannot find any damages against the defendant for any permanent womb trouble for there is no testimony herein that will permit you to find that the defendant's acts or omissions are responsible for a permanent injury to Mrs. Howard's womb."

In view of the fact that the only prejudicial effect this evidence could have had was its tendency to augment the

recovery, and in view of the above quoted instruction and the further fact that the trial court reduced the verdict of the jury from $3,000 to $2,000, we would not be warranted in a reversal of the judgment or a further reduction because of this error.

The judgment is affirmed.

CROW, C. J., MAIN, and FULLERTON, JJ., concur.