[No. 12083.    Department One.    January 8, 1915.]

HAZEL HELEN JOHNSTON *et al., by their Guardian etc.,*
*Appellants,* v. GEORGE NICHOLS, *Respondent.*[1]

LANDLORD AND TENANT—DEFECTIVE PREMISES—LIABILITY OF LAND-
LORD AND TENANT—CAVEAT EMPTOR.  In the absence of warranty or
covenant to repair, the landlord is under no legal duty to find and
disclose obscure defects in the leased premises of which he has no
knowledge, but the doctrine of *caveat emptor* applies in such cases;
hence the landlord is not liable for personal injuries to a tenant re-
sulting from the giving way of a porch railing the structural weak-
ness of which was as patent to the tenant as to the landlord.

JUDGMENT—NON OBSTANTE VEREDICTO.  Where the court can say,
as a matter of law, that there is neither fact nor reasonable infer-
ence from facts to support a verdict for plaintiff, it is warranted in
entering judgment notwithstanding the verdict, and is not restricted
to the granting of a new trial, if on the facts the plaintiff could not
state a cause of action.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered May 29, 1913, in favor of
the defendants, notwithstanding a verdict of a jury rendered
in favor of the plaintiffs, in an action for wrongful death.
Affirmed.

*C. C. Dalton* and *Herbert W. Meyers,* for appellants.
*Revelle, Revelle & Revelle,* for respondent.

CHADWICK, J.—For nearly five years prior to October 7,
1911, Ella Jennie Johnston had been a tenant of the defend-
ant, occupying premises in the city of Seattle.  In the sum-
mer of 1911, the street in front of the property was improved
by regrading and the building was adjusted to the new
grade by putting a brick story under the frame structure
that had been the subject of the tenancy.  Mrs. Johnston
had remained in the building during the period of repair
or reconstruction.  On November 15, 1911, Mrs. Johnston

[1]Reported in 145 Pac. 417.

with another, was in the act of passing a bed spring over the railing of a porch extending across the top or third story of the house as reconstructed. It was their intention to lower it or let it fall to the ground some twenty-two feet below, when the railing gave way and Mrs. Johnston was precipitated to the ground, sustaining injuries of which she died.

This suit is brought by the children of Mrs. Johnston, by their guardian *ad litem*, to recover damages. There is proof that the railing was structurally weak; that its weakness might have been known to any one by a slight examination, although not patent without some examination. The case went to a jury and a verdict was returned in favor of plaintiffs, whereupon the court, on motion of counsel for the defendant, entered a judgment notwithstanding the verdict. From this judgment, plaintiffs have appealed.

The case resolves itself into a pure question of law, and we shall not go further into the facts. The contract of lease, which was in writing, contained the following stipulations:

"Said lessee hereby agrees that said owner or his agent shall not be liable for any damages to property or personal injuries caused by any defects in said premises, or hereafter occurring. . . .

"Said lessee accepts said premises in their present condition and agrees to leave said premises in as good order and condition as they are now in, excepting the necessary wear and tear thereof and damage by the elements or fire."

The relation between a landlord and his tenant, and the duty of the landlord to answer for negligence, has been considered by this court in two recent cases. *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927; *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917. In speaking of the liability of the landlord for negligence, we said in the *Mesher* case,

"The liability as for negligence must arise either from a breach of some general duty arising as a legal incident to

the relation of landlord and tenant created by the contract, or from the negligent performance or negligent failure to perform some general duty imposed upon the landlord by the contract. A mere breach of contract, in the absence of some general duty, gives no basis for an action in tort."

The only question for us to consider, then, is whether the landlord has failed to perform some duty imposed by law or by contract. It is held in those cases that a tenant takes the property leased *caveat emptor*. In the *Howard* case it is said that the rule *caveat emptor* rests in contract. There is an implied assumption on the tenant's part of all risks arising out of obvious defects or conditions affecting the safety or fitness of the premises. In the absence of a warranty or covenant to repair, there is no greater duty of inspection upon the landlord than there is upon the tenant. The law imposes no burden of diligence or active duty upon the landlord to find and disclose obscure defects or dangers. The only exception in the absence of a contract to the rule *caveat emptor* is where there are obscure or latent defects or dangers known to the landlord and not known to the tenant. This exception is grounded in reason and in the fundamental principles of justice. It rests upon, and is sustained by, the moral obligation of every man knowing a danger to warn the innocent or the ignorant against that which may beset or befall him in the use of property which is put into his hands for a present or prospective consideration moving to the donor, vendor, or lessor.

In the case at bar, the railing had been made fast to the outer wall of the house with small nails or brads, toe-nailed into the wood. Either on account of the small number of nails used by the carpenter, or by reason of the accumulation of rust, the railing was, or had become, structurally weak, but it is not contended that the defect was obvious or that it could have been more readily seen and appreciated by the landlord than by Mrs. Johnston, who had occupied the premises, as we have said, for a term of years. We are

not disposed to reexamine the authorities or discuss the principles pertaining to the cases cited. It is enough to say that we find no facts that would take this case out of the rule there laid down—that is, in the absence of an agreement to repair, the landlord is under no legal duty to search for defects of which he has no knowledge.

Counsel contend in this case, as was contended in the *Howard* case, that there is a higher duty put upon the landlord; that he should be held liable not only for a failure to disclose obscure defects actually known to him at the time of the lease, but that he should exercise reasonable care to discover such obscure defects and to divulge them. That phase of the case was passed upon, and we there pointed out that but one court in this country held to the rule invoked, whereas the greater weight of authority, as well as of reason, is to the contrary.

Believing that all of the contentions of appellants' counsel have been met in the *Howard* and the *Mesher* cases, we shall adopt them as controlling authority, as did the trial judge.

We have not gone into the suggestion of counsel that an agreement on the part of a tenant to assume the risk of structural defects is void as a matter of public policy, nor shall we review the authority cited on either side. As shown in the cases hereinbefore referred to, there was no common law liability on the part of respondent to answer for damages in the absence of a contract to repair, unless the defect was known and not divulged. The parties did not contract with reference to any public right, nor did they undertake to contract away any common law right. Adverting, then, to the ancient principle that there is no higher or better public policy than to encourage the right of private contract, where there is no restraining statute, we pass this phase of the case.

Finally, it is contended that the court erred in entering a judgment *non obstante veredicto;* that, under the rule an-

nounced in *Forsyth v. Dow*, 81 Wash. 137, 142 Pac. 490, the state of the record is such that the court could make no order other than to grant a new trial.

If it were possible, under the facts of this case, for the plaintiff to state a cause of action in law, the rule there announced might apply, but where the court can say, as a matter of law, that there is neither fact nor reasonable inference from facts to support a verdict, and there is neither fact nor reason upon which a verdict could stand, the order of the court will be sustained under the authority of *Paich v. Northern Pac. R. Co.*, 82 Wash. 581, 144 Pac. 919.

Other questions are raised in the briefs, but having decided that there was no primary liability to answer for damages, it is unnecessary to discuss them.

Affirmed.

CROW, C. J., GOSE, PARKER, and MORRIS, JJ., concur.