# CHARLESTON.

## CHARLOW v. BLANKENSHIP.

### Submitted April 10, 1917.   Decided April 17, 1917.

1. LANDLORD AND TENANT—*Condition of Premises—Implied Covenant.*
   There is no implied covenant upon the part of the landlord in a lease that the premises are tenantable or reasonably suitable for occupation. In the absence of fraud or concealment by the lessor of the condition of the property at the date of the lease, the rule of *caveat emptor* applies.   (p. 202).

2. SAME—*Condition of Premises—Repairs.*
   There is no obligation upon a landlord to make repairs to leased premises during the continuance of the lease, in the absence of an express agreement to do so.   (p. 202).

3. SAME—*Negligent Repairs—Injury to Tenant—Liability.*
   Where a lessee of a storeroom is injured by the failure of the landlord to exercise due care in making repairs to that part of the building, the possession of which he retains, or by the negligent use by the lessor of such part of said building, such lessee may maintain a suit to recover damages for the injury resulting to him from such negligence, or want of due care.   (p. 202).

Error to Circuit Court, Raleigh County.

Action by Samuel Charlow against P. L. Blankenship. Judgment for defendant on a directed verdict, dismissing the suit, and plaintiff brings error.

*Reversed, verdict set aside, remanded.*

*Alfred D. Preston,* for plaintiff in error.

*Hutchinson & Hawley* and *File & File,* for defendant in error.

RITZ, JUDGE:

The defendant is the owner of a two-story brick building in the city of Beckley. The plaintiff in the fall of 1912 rented a storeroom in this building and this lease was extended from year to year, the storeroom being occupied by the plaintiff as a tailor shop at the time of the occurrences complained of in this suit. The second floor of the building was constructed for offices, one of which was occupied by the defendant. The

plaintiff's lease covers nothing but the storeroom described therein and does not give him any right or control over the remainder of the building. In April, 1915, plaintiff claims that he sustained substantial injury to his goods by reason of water leaking through the ceiling into the storeroom. That the storeroom was to some extent flooded on this occasion resulting in injury to the plaintiff is shown by the evidence. Upon investigation it was found that an aperture through the fire wall of the building, for the conveyance of the water which collected on the roof into a spout running down the side of the building, had become stopped up. This roof was surrounded by a fire wall. and this aperture was the only provision made for the escape of the water falling upon the roof, and the result of its becoming stopped up was that the water falling upon the roof remained there. A sufficient quantity collected to come up over the place where the edge of the composition roof joined a tin flashing fastened to the brick wall and ran through between the composition roof and this tin flashing and down into the building. It is shown by a tinner who repaired the roof on this occasion that the opening in the fire wall through which the water was conveyed to the down-spout was too small and that this caused it to become clogged up by a paper bag washed into it by the rain. The plaintiff testifies that prior to this time he was troubled by water leaking into his storeroom from above and that he notified the defendant in regard thereto, but it does not appear what, if anything, was done at that time to make repairs to the roof.

On another occasion, in the fall or summer of 1915, the plaintiff's storeroom was again flooded and his goods injured. This time the opening in the fire wall had become stopped up from straw washing into it. This straw was placed on the roof for the purpose of preventing injury thereto from bricks being used to repair the fire wall, which repairs defendant was having made. The opening into the down-spout was stopped up on this occasion in such a way that the water came through the hole in the wall, but instead of going into the spout ran down the side of the building and behind the cornice and into plaintiff's storeroom. Plain-

tiff also claims that his storeroom was flooded upon another occasion causing injury to him, but just what caused the trouble on this occasion is not quite clear. The defendant declined to make any reparation for the injury received by the plaintiff and this suit was brought to recover damages therefor. Upon the trial of the case the plaintiff testified as to the extent of his injury and also introduced evidence showing that the flooding of his storeroom was caused substantially as above detailed. At the conclusion of the plaintiff's evidence the court sustained a motion by the defendant to direct a verdict in his favor, and from the judgment of the court refusing to set aside this verdict and dismissing plaintiff's suit, this writ of error is prosecuted.

The defendant insists that no recovery can be had for the reason that there is no express covenant in this lease of fitness of the storeroom for any purpose, and the law does not imply such a covenant, and further that there is no covenant upon the part of the lessor, either express or implied, to make repairs. It is quite true that in the absence of fraud or concealment on the part of the lessor there is no implied covenant in a lease that the leased premises are tenantable or fit for the purpose for which the tenant intends to use them. Underhill on Landlord and Tenant, §477; 24 Cyc. 1047-1048; *Kline v. McLain*, 33 W. Va. 32; *Clifton v. Montague*, 40 W. Va. 207; *Windon v. Stewart*, 43 W. Va. 711; *Arbenz v. Exley*, 52 W. Va. 476. Neither is there any obligation upon the landlord to make repairs to the leased premises during the continuance of the lease in the absence of an agreement to do so. Taylor on Landlord and Tenant, §327; Underhill on Landlord & Tenant, §96; *Windon v. Stewart*, 43 W. Va. 711; *Kline v. McLain*, 33 W. Va. 32; *Arbenz v. Exley*, 52 W. Va. 476.

But this doctrine has no application to the case presented here. There is no question of fitness of the leased premises nor is there any claim for damages asserted because of a failure to make repairs upon the leased premises. The contention of the plaintiff is that the defendant has been negligent in the use and care of that part of the building remaining in his control. The tenant of a part of a building has a

right to rely upon the owner of the building exercising due and ordinary care in the use of that part of it remaining in his possession. The tenant has no access to any part of the building except what he has leased, and the landlord, as to those parts of the building of which he retains the possession and control, is under obligation to the tenant not to so carelessly or negligently use the same as to injure his tenant. He must exercise reasonable and ordinary care in the use of his premises and if he fail to do so he is liable to a stranger for an injury to his property resulting therefrom. *Walker* v. *Strosnider*, 67 W. Va. 39. Because the injury is suffered by a party who is his tenant does not relieve him from the obligation to pay the damages which result from his negligence. The tenant cannot prevent his landlord from using the part of the premises of which he retains the control as he pleases. He has no authority to go upon them and make any repairs that may be needed to prevent injury to his property, and to say that the landlord in such case is not liable for an injury occasioned by the defective condition of that part of the property remaining under his exclusive control, which he negligently refuses to correct, would be to say that a landlord in a case like this may ruin his tenant by his negligence without any obligation to make reparation.

In Underhill on Landlord and Tenant, §485, it is said: "It is a general rule that the landlord must keep in reasonable repair those portions of the demised premises which he retains in his possession and control. His obligation in this respect is not based on contract, but arises from the responsibility of an owner of real estate to persons who, by his invitation express or implied, are permitted to enter upon his property."

The same author, speaking of the obligation of the landlord in regard to keeping the roof in repair, at §489, says: "The landlord who retains the supervision and control of the roof of premises which are let out to several tenants in separate apartments is responsible for its condition and liable if he shall prove negligent. As to the liability of the landlord of a tenement house as regards the condition of the roof, it has been held he is bound to exercise reasonable

care and prudence to keep the roof of premises which are rented by him to tenants occupying separate apartments in a reasonably safe condition. This requirement of reasonable care and prudence would be satisfactorily met by proof that the landlord had caused the roof to be examined every month by a carpenter whom he hired, and the fact that the roof had been repaired a very short time before the accident. Whether the landlord has been negligent in the care of the roof is a question of fact to be determined on all the circumstances in each particular case.''

In 24 Cyc. at page 1115, it is said: ''The rule relieving the landlord, in the absence of a special agreement, from making ordinary repairs during the term, does not release him from liability in cases of injuries resulting from his failure to keep in proper repair such portions of a house as are not leased to any particular tenant, but are retained in the control of the landlord for the common use of several tenants.''

So in the case of *Mercantile Co.* v. *Thurmond,* 68 W. Va. at p. 536, Judge WILLIAMS speaking for the court says: ''The general rule of law is that, in the absence of express agreement, it is the duty of the tenant to make repairs of the leased premises. This rule is based on the principle that during the continuance of the lease the landlord has no right of entry. But the present case falls under a well recognized exception to this general rule. It is this. Where premises are leased in part to two or more tenants, with the right of each to use a certain part in common, the law obliges the landlord to keep such part in repair.''

The case of *Hargrove* v. *Hartopp,* 1 L. R. 472 (1905) is very similar to the case here. The suit was by a tenant of a part of a building to recover damages for injury to his property resulting from water coming through the roof because of a gutter becoming stopped up. Lord Alverstone, C. J., aptly states the principles controlling at page 477 as follows: ''It may be that a covenant by the landlord to repair is not to be implied in respect of those portions of the premises which are actually demised to the tenant. It is enough to say that that is not this case. Here the gutter

was not demised. And the question is whether under those circumstances the landlord is not under a duty to take reasonable care to prevent a gutter which is under his control from becoming stopped up, whereby damage may happen to the occupants of the floors below. I think there is, and that there being evidence of a failure to discharge that duty, inasmuch as the defendants never inspected the gutters, and delayed the repairs even after receipt of the notice, they are liable for the damage which ensued.''

This doctrine is supported by sound reason, and has been applied by the courts with practical unanimity. *Toole* v. *Beckett,* 67 Me. 544; *Payne* v. *Irvin,* 144 Ill. 482; *Kneeland* v. *Beare,* 11 N. D. 233; *Alperin* v. *Earle,* 55 Hun. 211; *Moodie Dry Goods Co.* v. *Gilruth,* 35 S. D. 567; *Hysore* v. *Quigley,* 9 Houston (Del.) 348; *Brown* v. *Garson,* 42 New Brunswick 354; *Schwarts* v. *Monday,* 97 N. Y. Sup. 978; *Kecoughtan Lodge* v. *Steiner,* 106 Va. 589; *Bancroft* v. *Godwin,* 41 Wash. 253; *Adams Grain & Pro. Co.* v. *C. & O. Ry. Co.,* 88 S. E. 171 (Va.); *Miller* v. *Hancock,* 2 Q. B. 177 (1893).

The defendant insists that the evidence does not show negligence upon his part. It appears that before the flooding of the plaintiff's store, at the time at which the first injury was inflicted for which damages are claimed, the defendant had been notified that the roof was leaking. It does not appear what, if anything, was done to remedy this. It also appears that at one of the times of which complaint is made the pipe was stopped up from straw, which had been left upon the roof by defendant's workmen, being washed into it. We cannot say that a jury could not properly find from these facts that the defendant was negligent, and if he was, and injury resulted therefrom to the plaintiff, he is entitled to recover the same in this suit. As the evidence appears in the record it was sufficient to go to the jury upon the issue of whether or not the defendant was negligent.

We are therefore of opinion to reverse the judgment complained of, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed, verdict set aside, remanded.*