[No. 21847.   Department Two.   July 9, 1929.]

Moris Larson, *Respondent*, v. Arthur E. Eldridge *et al., Appellants.*[1]

*Shank, Belt & Fairbrook,* for appellants.
*Vanderveer & Levinson,* for respondent.

Parker, J.—The plaintiff, Larson, who occupied a room in an apartment as sub-tenant of a Mrs. Berg, who was tenant as lessee of the apartment from the defendants Eldridge and wife, owners of the apartment house, seeks recovery of damages from them for personal injuries alleged as suffered by him as the result of their negligence in failing to maintain in a safe condition the railing on the balcony adjoining the room so occupied by him.   Trial in the superior court

[1]Reported in 279 Pac. 120.

for King county, sitting with a jury, resulted in verdict and judgment awarding to plaintiff recovery, from which the defendants have appealed to this court.

The principal contention here made in behalf of appellants, Eldridge and wife, is that, by reason of the tenancy of Mrs. Berg under which she held the apartment from them and thereby her entire control over the apartment and the balcony, they are not liable to her or respondent, Larson, her sub-tenant; and that the trial court should have so decided, as a matter of law, in response to appropriate timely motions made in that behalf by counsel for appellants.

The controlling facts, conceded or conclusively proven, as we view this record, touching this contention, may be summarized as follows: The apartment house in question, situated in Seattle and owned by appellants, is a two-story wooden building of considerable size, containing ten residence flats or apartments. Mrs. Berg rented from appellants one of the apartments, containing several rooms, just how many is not shown. Her renting contract was oral, and created only a month-to-month tenancy. Nothing whatever was said by either party to the renting contract as to maintenance or repairs of any portion of the apartment or the building. While the apartment so rented by Mrs. Berg is on the first or street floor of the building, just back of its front room, and opposite its kitchen, there is in the side of the building a recessed balcony, the floor of which is on the same level as the floor of the apartment and about eight feet above the ground at the side of the building. This is caused by the ground sloping downward from the street level. At the time in question, there was a railing, of apparently substantial and safe character, clear along the outer edge of the balcony; that, is, along the line of the extreme outer side of the building.

Access to the balcony was only through windows opening from the front room at the end of the balcony, the kitchen alongside the balcony and one of the rear rooms at the other end of the balcony. There was no access to the balcony from any other flat or apartment of the building. No one had any use of it whatever, or rightful access to it, other than Mrs. Berg and her subtenant or tenants, occupants of her apartment. There was no access to the balcony from the outside of the building. The sills of these windows were not over two feet above the floor, so there was fairly convenient access through them to the balcony, and it was manifestly intended that they should be freely so used by the occupants of the apartment. Potted plants and other things were kept on the balcony by the occupants of Mrs. Berg's apartment, as was done on similar balconies of the building by occupants of apartments opening thereon.

Some time after the renting of the apartment to Mrs. Berg, she rented the front room thereof to respondent, Larson. He kept some potted plants on the balcony, and frequently went out through the window to tend to them. At the time he was injured, he went out on the balcony for that purpose. Two boys were then playing ball by the building on that side. One of them playfully threw the ball up to respondent, intending him to catch it. He then leaned, slightly as he claims, against the railing of the balcony, reaching for the ball, when the railing gave way, causing him to fall to the ground about eight feet below, and so received the injuries for which he here seeks recovery. There is no evidence indicating in any degree that appellants had any knowledge or reason to suspect, at the time they rented the apartment to Mrs. Berg, that the railing of the balcony was other than safe and in a good state of repair.

██ Assuming for the present the facts above noticed to be all the controlling facts of the case, we first inquire as to whether or not appellants owed Mrs. Berg, their tenant, any duty of repair or maintenance of the balcony railing. The law is well stated by Judge Ellis, speaking for this court in *Mesher v. Osborne,* 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917, as follows:

"It is a general principle that, in the absence of express contract to the contrary, a tenant takes the demised premises as he finds them and there is no implied warranty by the landlord that they are safe or fit for the purpose for which they are hired. The maxim *caveat emptor* applies. 3 Shearman & Redfield, Negligence (6th ed.), § 709; . . ."

Our decisions in *Ward v. Hinkleman,* 37 Wash. 375, 79 Pac. 956; *Baker v. Moeller,* 52 Wash. 605, 101 Pac. 231, and *Johnston v. Nichols,* 83 Wash. 394, 145 Pac. 417, adhere to this view of the law. It is the law in most, if not all, the states of the Union; 16 R. C. L. 1031; as it is also the law in England; Woodfall's Law of Landlord & Tenant (20th. ed.) 212.

At the commencement of Mrs. Berg's tenancy of the apartment, the balcony railing was apparently safe and in a good state of repair, and appellants did not then have any knowledge or reason to suspect that it was otherwise. The balcony was also at all times exclusively accessible from the apartment Mrs. Berg rented from the appellants; it being to all intents and purposes a part of that apartment and exclusively for use in connection therewith. This is not a question of a landlord's duty to maintain in a safe state of repair hallways, stairs, porches, roofs or other portions of his building, retained under his control for the common use or benefit of his several tenants in the building, as has often been drawn in question in such cases

as *McGinnis v. Keylon,* 135 Wash. 588, 238 Pac. 631; *Davies v. Kelley,* 112 Ohio 122, 146 N. E. 888; *Charlow v. Blankenship,* 80 W. Va. 200, 92 S. E. 318; *Merritt v. Haas,* 106 Minn. 275, 118 N. W. 1023, 119 N. W. 247, and *Hinthorn v. Benfer,* 90 Kan. 731, 136 Pac. 247. It seems clear to us under these facts that appellants did not owe to Mrs. Berg any duty whatever of repair or maintenance of the balcony railing, since she, as tenant, had possession and was in as complete control of the apartment and the balcony, as a part of it, as if they had constituted a separate dwelling house.

We next inquire, What, if any, was the duty of appellants to respondent with reference to maintenance and repair of the balcony railing? Our decisions, in harmony with the law, as announced in other jurisdictions, are to the effect that the original lessor does not owe any higher duty to his tenant's sub-tenants, customers or invitees than he owes to his own tenant. *Baker v. Moeller,* 52 Wash. 605, 101 Pac. 231; *Hogan v. Metropolitan Building Co.,* 120 Wash. 82, 206 Pac. 959; *Uhl Brothers v. Hull,* 130 Wash. 90, 226 Pac. 723. Clearly, we think, in the light of the facts above noticed, appellants' duty to respondent, with reference to repair and maintenance of the balcony railing, was no greater than their duty to Mrs. Berg, their tenant, to whom we have concluded they owed no duty of repair and maintenance.

Testimony was offered in behalf of respondent, and permitted by the trial court to be received in evidence before the jury, over the objection of counsel for appellants, tending to show that, at the time of the renting of the apartment by appellants to Mrs. Berg, there was in existence in real estate renting circles in Seattle a local custom to the effect that there was impliedly incorporated in, and became a part of, all rental contracts of apartments in apartment houses a cove-

nant on the part of the owner to maintain and keep in repair the outside portions of an apartment building. This testimony counsel for respondent contends was such as warranted the jury in concluding that such a covenant on the part of appellants did in fact become a part of their rental contract with Mrs. Berg, and was applicable to the repair and maintenance of the balcony railing. Counsel for appellants contend that the evidence falls short of proving such custom applicable to the maintenance and repair of the balcony railing, since that was a part of the apartment within Mrs. Berg's possession and control and exclusively for the use of the apartment of which she was a tenant. The proof, it seems to us, went no farther than tending to show that landlords in such cases customarily repaired the outside of their buildings in so far as it was to their interest to do so, and not as an obligation owing to their tenants. However this may be, we are of the opinion that no proof of custom was admissible in this case, which could have the effect of importing into the rental contract between Mrs. Berg and appellants a covenant on their part to repair and maintain the balcony railing which was so exclusively for her use as tenant of the apartment. To allow proof of such nature to be controlling, would be to allow local custom to override thoroughly established law. The problem of the admissibility of proof of custom looking to the importing of such a covenant into a tenancy contract under conditions very similar to those here presented, was learnedly and exhaustively reviewed by Chief Justice Rugg of the supreme judicial court of Massachusetts in the comparatively late case of *Conahan v. Fisher*, 233 Mass. 234, 124 N. E. 13. Speaking for the court and holding to our view of the law, he there said in part:

"The tenant offered testimony to show that there was a universal custom, in Boston, where the accident occurred, in the letting of tenements without written lease, when nothing was said between the owner and the prospective tenant as to repairs, for the owner to make necessary repairs and keep the property tenantable and in a safe condition. It was excluded subject to the plaintiffs' exception.

"Certain rules of law touching the respective rights and liabilities of landlord and tenant have become thoroughly fixed. No warranty is implied by the letting of premises that they are reasonably fit for use. The lessee takes an estate in the demised premises and he assumes the risk of their quality in the absence of an express warranty or deceit. *Tuttle v. Gilbert Manuf. Co.,* 145 Mass. 169. There is no duty implied by the relation of lessor and lessee that the former shall keep the premises in a safe condition while in the possession of the latter, or in the same condition as they were in at the beginning of the tenancy. *Walsh v. Schmidt,* 206 Mass. 405. *Kearines v. Cullen,* 183 Mass. 298. It was said in *Galvin v. Beals,* 187 Mass. 250, 252, with ample citation of authorities, that 'The general rule in this Commonwealth must be considered as settled that a tenant cannot recover against his landlord for personal injuries occasioned by the defective condition of the premises let, unless the landlord agrees to repair, makes the repairs, and is negligent in making them.' This rule has been reaffirmed in numerous cases subsequently decided. See, for example, *Mackey v. Lonergan,* 221 Mass. 296; *Lane v. Raynes,* 223 Mass. 514; *Rolfe v. Tufts,* 216 Mass. 563; *Miles v. Janvrin,* 200 Mass. 514; *Baum v. Ahlborn,* 210 Mass. 336. See also *Tredway v. Machin,* 91 L. T. (N. S.) 310.

"These are the well settled incidents of the contract between the parties arising out of the relation of landlord and tenant. They are the terms of the contract implied from the existence of that relation. They also are the principles of law controlling the rights of lessor and lessee when not varied by the provisions of an express contract. They spring from the essential attributes of a lease, whether oral or written. These

principles of law have been much discussed throughout our reports, because the contract implied from an oral lease of a tenement is so common and extends widely through the Commonwealth. The governing rules have become rules of property.

"The practical effect of admitting testimony of such a custom would be to overrule by evidence all these and many other like decisions. It is not the province of custom or usage as recognized by the law to accomplish any such result.

"The law itself has, however, fixed with precision the respective rights and obligations of landlord and tenant under an oral lease as to repairs upon the demised premises in the absence of definite contract. It is beyond the province of custom to vary this rule. It can be done only by express contract. Two diametrically opposed principles of law cannot govern the same facts at the same moment."

This exposition of the law upon this subject finds support in abundance of authority. See 27 R. C. L. 164, where many decisions of the courts are collected in the note. It seems to us quite unnecessary for us to cite further authority upon the subject.

We conclude that the trial court erred in receiving in evidence testimony tending to show the establishment of a local custom in Seattle with a view of impliedly importing into the tenancy contract between Mrs. Berg and appellants a covenant to repair and maintain the balcony railing; and that such evidence should have been excluded from the jury, which leaving no ground for the award of damage to respondent, as against appellants, to rest upon, the case should have been, by the trial court, taken from the jury and dismissed as a matter of law in response to appropriate timely motions made in that behalf by counsel for appellants.

The judgment is reversed and the action dismissed.

MILLARD, MAIN, BEALS, and FRENCH, JJ., concur.