[No. 23486. Department One. March 24, 1932.]

VICTOR MILLER *et al., Respondents,* v. VANCE LUMBER COMPANY, *Appellant.*[1]

[1]Reported in 9 P. (2d) 351.

*Stephen V. Carey* and *Henry T. Ivers,* for appellant.
*Long & Hammer,* for respondents.

PARKER, J.—The plaintiffs, Miller and wife, commenced this action in the superior court for King county seeking recovery for personal injuries suffered by Mrs. Miller, claimed as the result of the negligence of the defendant lumber company in its failure to make safe the plaster of the ceiling of the bathroom of the apartment occupied by them as tenants of the lumber company in its apartment house. A trial upon the merits in that court, sitting with a jury, resulted in verdict and judgment awarding to Miller and wife recovery against the lumber company in the sum of $750, from which it has appealed to this court.

Reversal of the judgment and dismissal of the action are sought upon the sole ground that the evidence does not support the awarding of any recovery to Miller and wife, and that the trial court should have so decided as a matter of law in response to .appropriate motions made in that behalf.

The controlling facts, admitted or shown by the evidence introduced in behalf of Miller and wife, may be fairly summarized as follows: The lumber company was the owner of the apartment house at all times in question. Mrs. Simmons was the lumber company's managing agent of the apartment house, which agency included authority on her part to rent the apartments to tenants and to collect rent therefor. Mrs. Simmons' husband was the engineer of the apartment house.

On September 23, Mrs. Simmons rented the furnished apartment No. 317 to Miller and wife, receiving therefor one month's rent in advance. They moved into the apartment on that day. They inspected the apartment, including the bathroom, and there did not then appear any defect in the plastering of the bathroom ceiling. This was the beginning of a month-to-month tenancy for ordinary housekeeping purposes.

On Thursday, October 16, Mr. Miller first noticed a defect in the plastering of the bathroom ceiling. He testified as to what was then said and done with reference thereto, as follows:

"Q. Did you get in touch with the management of the building that evening? A. Yes, sir. Q. Who did you get in touch with? A. Well, when I called up the first time I thought it was Mrs. Simmons, but the lady who answered the phone said that Mrs. Simmons was not in, and that she would tell her as soon as she did come in. An hour later the phone rang again, she says 'What is the trouble, Mr. Miller? This is Mrs. Simmons speaking.' I says, 'The plaster in the bathroom is cracked. I want to report it to you.' She said she would have Mr. Simmons take care of it right away."

There is no further evidence in the record as to the nature or extent of the then defect in the bathroom ceiling plaster.

Nothing was done about the matter until the fore-

noon of Saturday, October 18. As to what was then done, Mr. Miller testified that, during that evening, after the accident, Mrs. Simmons said to him: "Mr. Simmons and I went up this morning to look at the plaster. We thought it would be safe until Monday." There is no other testimony as to the then condition of the plaster.

Mr. and Mrs. Miller were both employed in business vocations, taking them away from the apartment during the business hours of the day. They came home to the apartment that evening as usual. A short time thereafter, Mrs. Miller went into the bathroom, and, when she had come to near the center of the bathroom, a section of the ceiling plaster, about fourteen by twenty inches, fell, inflicting upon her the injuries in question. Mr. and Mrs. Simmons, in response to a call from the apartment, came very soon thereafter. It was soon thereafter that Mrs. Simmons told Mr. Miller of the inspection of the plaster by herself and Mr. Simmons that morning.

It is the settled rule of law in this state, prevailing generally in the United States and England, that,

" . . . in the absence of express contract to the contrary, a tenant takes the demised premises as he finds them and there is no implied warranty by the landlord that they are safe or fit for the purpose for which they are hired. The maxim *caveat emptor* applies." *Mesher v. Osborne,* 75 Wash. 439; 134 Pac. 1092, 48 L. R. A. (N. S.) 917.

See *Larson v. Eldridge,* 153 Wash. 23, 279 Pac. 120, and our prior decisions therein noticed. This rule was in that case held applicable to a resident tenant of an apartment in an apartment house, as well as to a resident tenant of the whole of a separate dwelling house, when the tenant's right of control and enjoyment of

the apartment under his tenancy is as complete and exclusive as it would be under an ordinary tenancy of a separate dwelling house.

The original tenancy contract did not contain any promise by or for the lumber company to make any repairs in the apartment. The original tenancy contract did not contain any warranty by or for the landlord that the apartment was safe and fit for the purpose for which it was rented to the tenant. The original tenancy contract gave Miller and wife as complete and exclusive right of control and enjoyment of the apartment as if it were a tenancy of a separate dwelling house.

It is argued that the original tenancy contract impliedly put upon the lumber company a contractual duty of repair, because of a custom to that effect in the management of apartment houses in Seattle, of such notoriety that the court should take judicial notice thereof and construe the original tenancy contract accordingly. Our decision in *Larson v. Eldridge,* 153 Wash. 23, 279 Pac. 120, is decisive against this contention.

The fact that the apartment was rented to Miller and wife, furnished, by the lumber company is stressed by their counsel as tending to evidence a tenancy of a somewhat different nature than an ordinary tenancy of a dwelling house or an unfurnished apartment. There is that difference between this tenancy and the tenancy involved in *Larson v. Eldridge,* 153 Wash. 23, 279 Pac. 120. But we are of the opinion that such difference in the tenancies does not furnish any substantial ground for recognizing any distinction between the legal relation of the landlord and tenant in that case and the legal relation of the landlord and tenant in this case.

These considerations, we think, call for the conclu-

sion that the tenants, Miller and wife, do not have any right of recovery against their landlord, the lumber company, rested upon any breach of their original tenancy contract.

It is contended in behalf of Miller and wife that the lumber company, in any event, incurred a contractual obligation to them to repair the ceiling of the bathroom upon its manager, Mrs. Simmons, being advised by Mr. Miller, on October 16, that the plaster of the bathroom was cracked, and her reply that she would have Mr. Simmons take care of it right away. In the text of 16 R. C. L. 1033, we read:

"It has frequently been held that the landlord is under no obligation to make repairs, unless such a stipulation is made a part of the original contract, and that any subsequent promise to make repairs, founded merely on the relation of the parties, and not one of the conditions of the lease, is without consideration, and for that reason creates no liability. According to some decisions a mere promise by the landlord to repair, based alone upon the tenant's agreement not to abandon the demised premises before the end of his term, is without consideration, and cannot be enforced, but there is also authority to the effect that although a landlord is not bound originally to repair the premises, if the tenant notifies him that the premises are defective and threatens to vacate, and the landlord thereupon promises to make repairs, he is liable to the tenant for a failure to make such repairs. Even though a gratuitous executory contract of this kind would not be binding on the landlord, he would place himself in a very different position if he should see fit to treat it as binding, and actually enter upon its fulfilment. He is at liberty to repudiate it, or to perform it at his option, but if his choice should be to perform it he comes under some measure of liability as to the manner of its performance."

This is not a case of a repair contract obligation arising after the commencement of the tenancy be-

tween the landlord and tenant by reason of the landlord's promise to repair and the tenant's promise to remain in consideration thereof; nor by reason of the promise to repair in response to the tenant's threat to move if the landlord does not repair; nor by the landlord's actually assuming an obligation to repair by actually commencing such repairs before the accident occurs.

It seems plain to us that this mere notice by Mr. Miller to Mrs. Simmons, the lumber company's manager of the apartment house, and her response above noticed, did not give rise to any new contract repair obligation on the part of the lumber company; and that therefore the lumber company is not liable for the breach of any such claimed contract.

Did the lumber company become liable in damages as for a tort liability in its failure to repair and make safe the ceiling of the bathroom prior to the occurrence of Mrs. Miller's injury? It may be conceded that the lumber company might become so liable if the defect in the ceiling had existed at the time of the commencement of the tenancy and was then known to or should have been known to the lumber company as being of a character likely to damage someone who might rightfully be in the bathroom either as a tenant or a lawful invitee therein. There is no evidence in this record pointing to any defect in the plastering at the time of the commencement of the tenancy. Whatever defect there was of that nature manifestly occurred thereafter, and did not become noticeable until well towards the expiration of the first month of the tenancy, that is, on October 16, when Mr. Miller first noticed it; evidently being the one to first discover it.

In *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927, 52 L. R. A. (N. S.) 578, the injury to the tenant was caused by a dangerous condi-

tion of an electric light switch, known to the landlord when the tenancy commenced, and not disclosed to the tenant. The landlord was held liable for damages to the tenant as for tort, it being assumed that there was no agreement to repair. *Mesher v. Osborne,* 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917, was a somewhat similar case wherein the landlord was held liable. In that case, Judge Ellis, speaking for the court, said:

"To the general rule of the landlord's nonliability for injury from defects, there is the well recognized exception that, even in the absence of warranty or express agreement by the landlord to repair, he is liable to the tenant or the tenant's guest as for a tort, where, with actual knowledge of obscure defects or dangers at the time of the letting, he lets the premises without disclosing such defects to a tenant who does not know, and by the exercise of reasonable care would not discover them. The duty to disclose such latent defects and dangers when actually known to the landlord exists without regard to any covenant or lack of covenant to repair. But in the absence of such covenant, there is no duty of inspection on the landlord's part to discover latent and unknown defects. 3 Shearman & Redfield, Negligence (6th ed.), § 709; *Moore v. Parker,* 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778; *Cowen v. Sunderland,* 145 Mass. 363, 14 N. E. 117, 1 Am. St. 469; *Coke v. Gutkese,* 80 Ky. 598, 44 Am. Rep. 499; *Martin v. Richards,* 155 Mass. 381, 29 N. E. 591; *Anderson v. Hayes,* 101 Wis. 538, 77 N. W. 891, 70 Am. St. 930; *Edwards v. New York & H. R. Co.,* 98 N. Y. 245, 50 Am. Rep. 659; *Kern v. Myll,* 80 Mich. 525, 45 N. W. 587, 8 L. R. A. 682; *Howard v. Washington Water Power Co.,* 75 Wash. 255, 134 Pac. 927."

In *Lowe v. O'Brien,* 77 Wash. 677, 138 Pac. 295, the landlord promised repair of the premises in response to his tenant's saying to him that, if he did not fix the house and make it safe, she would have to move out. This was, in substance, a promise by the landlord,

supported by an implied promise of the tenant to remand if the repair would soon be made. It was held that the tenant was absolved from the charge of assumption of risk because she remained a short time awaiting the landlord's fulfilment of his promise, during which time she was injured because of his failure in that regard.

In *Johnson v. Dye,* 131 Wash. 637, 230 Pac. 625, the landlord, at the beginning of the tenancy, assumed the contractual obligation of keeping the premises in repair. The landlord was held liable, as for tort, for damage to the tenant resulting from latent defects in the support of the steps which would have been readily discovered by him had he fulfilled his obligation to repair the steps, as prior to the accident was several times demanded of him by the tenant.

In *McCourtie v. Bayton,* 159 Wash. 418, 294 Pac. 238, the damage occurred by reason of negligence of the landlord in leaving a portion of the premises in a dangerous condition while he was actually engaged in repairing the premises. The landlord was held liable to the tenant so damaged as for tort.

These decisions, principally relied upon by counsel for Miller and wife, touching the question of the lumber company's tort liability, we think, do not support their contention in that behalf. No decision has come to our notice holding a landlord liable in damages to the tenant as for tort where, as in this case, there was no contractual obligation to repair in the original tenancy contract or in any subsequent contract, and no known dangerous defect in the premises at the time of the commencement of the tenancy, nor any dangerous defect in the premises at any time known to the landlord and not known to the tenant.

We conclude that the landlord, the lumber company, is not liable to Miller and wife, its tenants, either upon

the theory of breach of any contractual obligation or upon the theory of any tort obligation. The judgment is reversed, and the cause remanded to the superior court with directions to dismiss the action.

MITCHELL, BEELER, and MILLARD, JJ., concur.

TOLMAN, C. J. (dissenting)—The tenant of a furnished apartment is not ordinarily expected to make repairs, and in a case like this, where the owner maintains employees for that purpose, the tenant in all probability would not be permitted to make repairs. In my opinion, on the facts here shown, the rule applicable to a lodging house keeper or to the operator of an hotel should be applied. I therefore dissent.

