[No. 30905. Department One. September 3, 1949.]

IDA MAE CONRADI, *Individually and as Executrix, Appellant,* v. GRANT ARNOLD *et al., Respondents.*[1]

*Peyser, Bailey & Cartano,* for appellant.

*Rode, Cook & Watkins* and *Frederick J. Orth,* for respondents.

BEALS, J.—Ida Mae Conradi, as executrix of the will of William E. Conradi, deceased, and personally, instituted this action against Grant Arnold and Elizabeth Arnold, his

[1]Reported in 209 P. (2d) 491.

wife, asking for judgment for damages on each of two separate causes of action stated in the second amended complaint, hereinafter referred to as the complaint.

The first cause of action was brought under the survival statute, Rem. Rev. Stat., § 194 [P.P.C. § 3-43], as set forth in the complaint, plaintiff demanding judgment against the defendants for $10,380, on account of pain and suffering sustained by her deceased husband during his lifetime because of the alleged negligence of defendants, together with expenses incurred during the last illness of the deceased.

By her second cause of action, plaintiff demanded judgment against defendants for fifteen thousand dollars, on account of the loss of prospective earnings by Mr. Conradi during his reasonable life expectancy, for the benefit of plaintiff and Mr. Conradi's surviving daughter, together with ten thousand dollars by way of damages suffered by plaintiff and Mr. Conradi's daughter, occasioned by the death of Mr. Conradi. Plaintiff also demanded judgment in the further sum of five hundred dollars on account of the expenses of Mr. Conradi's funeral, making a total of $25,-500, based upon her second cause of action.

In her complaint, plaintiff alleged that, prior to January 23, 1948, plaintiff and the late William E. Conradi were husband and wife, residing as tenants in a third-floor apartment in a building owned and operated by defendants Arnold; that, on October 7, 1947, at about ten minutes after six o'clock a. m., Mr. Conradi proceeded.to leave the apartment and was about to descend the stairway leading therefrom to the second floor; that the entire stairway was under the control of defendants; that, due to the negligence of defendants in maintaining the stairway, it was in a dangerous and unsafe condition; and that Mr. Conradi slipped and fell from the top of the stairway down approximately sixteen steps to the landing beyond the lower step thereof.

Plaintiff pleaded certain ordinances of the city of Seattle relating to buildings, the construction and lighting thereof, and the maintenance of a healthful temperature therein, and alleged that the stairway was defective in certain

named particulars (hereinafter referred to); that, as a result of the fall, Mr. Conradi suffered severe injuries and thereafter endured great pain; that the fall was the proximate cause of Mr. Conradi's death, which occurred January 23, 1948, and that Mr. Conradi's suffering and death proximately resulted from defendants' negligence.

Plaintiff also alleged in her complaint that, about the middle of December, 1947, defendants served upon Mr. Conradi and the plaintiff notices terminating their tenancy and requiring them to surrender possession of the apartment January 15, 1948; that she and her husband complied with this notice; and that, in moving, Mr. Conradi lifted many heavy boxes and other articles, to his further injury.

By their answer to plaintiff's complaint, the defendants admitted the existence of the ordinances of the city of Seattle pleaded by plaintiff; that Mr. and Mrs. Conradi were their tenants; that Mr. Conradi fell and was injured; and that he died on the date alleged, but denied the other material allegations of the complaint and particularly that plaintiff had suffered damage as the result of any negligence on the part of the defendants.

By way of an affirmative defense, the defendants alleged that any injuries sustained by Mr. Conradi or by the plaintiff were solely caused by and resulted from Mr. Conradi's own contributory negligence.

By her reply, plaintiff denied the affirmative allegations contained in defendants' answer.

The action was tried to the court, sitting without a jury, and, after having personally inspected the premises, the trial judge entered findings of fact and conclusions of law in favor of the defendants, followed by the entry of a judgment in favor of defendants, dismissing plaintiff's action with prejudice. From this judgment, plaintiff has appealed, making the following assignment of errors:

"(1) The Superior Court erred in finding that William E. Conradi was fully familiar with the condition of the hallway, including the rug or strip of carpet, the bare floor and the conditions thereof (Finding No. III).

"(2) The Superior Court erred in finding that William E. Conradi was guilty of contributory negligence (Findings No. IV and V).

"(3) The Superior Court erred in finding that there is no evidence that any negligent or unlawful act on the part of the respondents was a proximate cause of Conradi's death (Finding No. VII).

"(4) The Superior Court erred in making its Conclusion of Law that the respondents were guilty of no negligent or unlawful act which was a proximate cause of the death of Conradi (Conclusion No. I).

"(5) The Superior Court erred in making its Conclusion of Law that the complaint of appellant should be dismissed with prejudice and that respondents should be allowed judgment against appellant for their costs (Conclusion No. II).

"(6) The Superior Court erred in entering judgment in favor of respondents and against appellant, dismissing appellant's complaint and awarding costs against her.

"(7) The Superior Court erred in overruling appellant's motion for judgment notwithstanding the oral decision.

"(8) The Superior Court erred in overruling appellant's motion for a new trial."

The late William E. Conradi and the appellant herein, Ida Mae Conradi, were for many years husband and wife, and were the parents of Mrs. Thomas Long.

The respondents Grant and Elizabeth Arnold are husband and wife, and, as a marital community, owned an apartment building known as No. 5808 Fifteenth avenue northeast, in the city of Seattle. They occupied an apartment in the building and rented the other apartments.

During the month of April, 1947, Mrs. Conradi, on behalf of the community composed of herself and her husband, rented from respondents apartment No. 9, on a month-to-month basis, it being understood that respondents would supply electricity and heat. Mr. and Mrs. Conradi took possession of their apartment, which they occupied until January 15, 1948, when they departed, as will be hereinafter set forth.

Apartment No. 9 was on the third floor of the building and was accessible only by way of a rather steep flight of

stairs, consisting of sixteen steps. In this opinion, we shall refer to the left and right sides of the stairway from the standpoint of a person leaving the apartment to descend the stairs. On the left-hand side of the stairway was a vertical wall, and on the right-hand side was a bannister. The flight of stairs ended at the top at the door opening into the apartment. There was no stair landing whatever on the outside of this door. One leaving the apartment to go downstairs would step from the floor in the doorway down the first step of the stairway. The door to the apartment opened inward, to the left of one leaving the apartment. The floor of the apartment was of hardwood, and was bare for a distance of ten or twelve inches on the approach to the door from within the apartment. The floor extended under the door and for a distance of only two or three inches beyond the door toward the stairway. The edge of the floor next to the stairway consisted of a narrow strip of hardwood, and there was testimony to the effect that this portion of the floor was somewhat loose and would tilt a little when a person placed his weight thereon. Respondents' testimony was to the effect that the strip referred to was not loose.

There was also testimony to the effect that the bare portion of the apartment floor was somewhat slippery. Appellant testified that she kept the hardwood floor of the apartment, between the end of the rug or carpet and the door to the apartment, cleaned and polished, and that, on several occasions, she had observed that someone was cleaning or polishing that portion of the floor which projected beyond the door.

On the staircase wall, to the right of a person leaving the apartment and at a convenient elevation above the bannister rail, was a short handrail, to be used until the person descending the stairs reached a position where use of the bannister rail was convenient. It appeared that, at the time of Mr. Conradi's accident, this handrail was somewhat loose. However, it may be noted that it does not appear

that, on the occasion of the accident, Mr. Conradi took hold of this rail.

There was an electric light on the first floor at the foot of the second flight of steps, when descending, but this light could be turned on only by a switch on the ground floor. It also appears that this light was generally not turned on.

Upon the ceiling of the apartment, just inside the door, was an electric light which was controlled by a push button on the wall of the stairway, outside the door of the apartment. Consequently, anyone desiring to descend from the apartment with the aid of this light would be required to open the door, stand on the top step of the stairway (which, as above stated, was the floor of the apartment), or descend one step, then reach to his right and press the light switch to turn on the light, which, while the door was open, would illuminate at least the upper portion of the stairway.

The apartment door did not open on the middle of the stairway (all as shown by a photograph which was introduced in evidence), but somewhat to the right of the center thereof, as a person descended. The center portion of the stairway was covered with a stair carpet, but, as shown by a photograph, this carpet did not coincide exactly with the doorway. The floor carpet or rug in the apartment hall did not extend to the door, but ended at the distance from the door above mentioned.

There was a window, apparently covered by a light curtain, on the landing at the foot of the stairs, but this window afforded little, if any, aid in lighting the stairway during hours of dusk. It would seem that the stairway was, at all times, rather dark, unless the light, above referred to, within the apartment, was turned on and the apartment door was open.

The photographs of the stairway, door, and so forth, which were offered as exhibits by respondents and received in evidence, were taken during the month of December, 1947.

Mr. Conradi was employed as an engineer on a cannery tender operating in Alaskan waters. He would be at home for a day or so at intervals of about two weeks. On the morning of October 7, 1947, Mr. Conradi arose, and, at a few minutes after six o'clock, standard time, started to leave the apartment. No lights were turned on in the apartment. The light at the foot of the stairway on the first floor was not turned on, and Mr. Conradi, as Mrs. Conradi testified at the trial, opened the apartment door and, while standing on the floor of the apartment, reached for the light switch on the stairway wall to the right of the door for the purpose of turning on the light within the apartment, which would illuminate the stairway. As Mr. Conradi turned, he fell down the staircase. Mrs. Conradi, who saw her husband fall, hurried to the landing at the foot of the stairs, where she found Mr. Conradi lying with his back resting against the lower step. The loose rug on the landing was wrapped around his legs. Mrs. Conradi released her husband from the rug, and, notwithstanding her protests, he insisted upon going to work and departed.

A witness, Carrie McGranahan (who was not previously acquainted with Mr. Conradi), while waiting on the street for transportation to her place of employment, saw him fall to his knees after attempting to open a garage door. The witness asked Mr. Conradi if he had suffered a heart attack and offered to assist him. Mr. Conradi told her that he had just fallen down a flight of stairs, but that he did not require help. She saw him enter the garage, apparently still in distress.

At about three o'clock in the afternoon, or a little later, Mrs. Conradi, hearing a noise outside the apartment, opened the door and found her husband slowly ascending the stairs. He told her that he had left his work as soon as his assistant had arrived to relieve him. That evening, with the assistance of Mr. Conradi's son-in-law, who carried Mr. Conradi down the stairs to his car, the injured man was taken to a doctor, who, by means of X rays, ascertained that Mr. Conradi's right heel bone had been crushed. A

cast was applied, and, about two weeks thereafter, Mr. Conradi was taken to a hospital, where an operation was performed upon his injured foot and another cast was applied, which reached to his hip. He remained in the cast for almost nine weeks thereafter. Mr. Conradi also complained of an injury to his back, and sustained some severe bruises. Although he suffered much pain, Mr. Conradi apparently made substantial progress toward a recovery.

December 15th, respondents served upon each of the Conradis a notice requiring them to vacate the apartment within thirty days. Mr. Conradi's leg was still in a cast, and, in the effort to find another place to live, he became tired, lost weight, and showed signs of physical deterioration.

The trial court, over respondents' objection, permitted appellant to introduce testimony in connection with the notices to quit, which respondents served upon Mr. Conradi and appellant, and also admitted testimony concerning the physical efforts which Mr. Conradi exerted in moving from the apartment. The same is true as to testimony regarding the degree of heat furnished the apartment by respondents, appellant contending that the heat was insufficient to keep the apartment warm. The court reserved its ruling as to the admissibility of all this testimony, but never finally passed upon this question, as the action was dismissed upon the merits.

During argument upon the admissibility of the testimony, appellant's counsel referred to certain Federal statutes and regulations concerning the dispossession of tenants, but no such statutes or regulations were pleaded nor were any introduced in evidence.

In connection with the notices to terminate tenancy served by respondents, appellant testified that she had consulted her attorney, who advised her to see the local office of price administration authorities. Mrs. Conradi testified that she followed this advice, taking the notices to the OPA office, where, in response to questions, she detailed the circumstances, but was told that "there was

nothing they could do." It does not appear that either Mr. or Mrs. Conradi took any further legal steps to contest the termination of tenancy.

Respondents were requested to permit the Conradis to continue to occupy the apartment until they could find a suitable place to live, but respondents insisted that the apartment be vacated by the evening of January 15, 1948. In order to meet this deadline, the Conradis were required to work hard, packing and moving. Although they engaged movers to carry their possessions from the apartment, Mr. Conradi became extremely fatigued from walking up and down the stairs, and exerted himself to a great degree in unloading goods from their car, some for storage at his daughter's residence, and other articles at their new place of abode.

After moving (January 15th), Mr. Conradi's physical condition deteriorated, and, January 23rd, while driving his automobile from his daughter's home to the Conradi residence, he suffered a heart attack, dying almost immediately.

At the time of his death, Mr. Conradi was sixty-two years of age. He was a trained machinist and diesel engineer, and had been employed both at sea and on shore. He had suffered from diabetes since 1939, but apparently this disease had not interfered with his work. It appears that he had also suffered from a heart ailment for some time, but this condition was not known until an autopsy was performed. At his age, Mr. Conradi had a normal life expectancy of something over twelve years.

At the close of the testimony, the trial court delivered its oral decision, stating that "evidence in volumes" had been received, over objections, and that the time of argument had not been limited. The decision also states that, at the request of counsel (at the close of appellant's case), the court had examined the premises, climbing up the stairway to the apartment, and obtaining firsthand knowledge of the situation. The court called attention to the fact that Mr. and Mrs. Conradi had occupied the apartment for six

months and were thoroughly acquainted with the staircase and its appurtenances.

The court strongly criticized respondents for serving notices upon the Conradis to move from the premises and also for the rather objectionable terms in which the notices were drawn, the phraseology being such as would be humiliating to the Conradis.

The court also called attention to the fact that, when the Conradis moved, Mr. Conradi underwent some rather extraordinary physical exertion in connection with the moving, thereby exhausting his energy, but observed that Mr. Conradi did this as a matter of his own choice.

In summing up the situation, the trial court was of the opinion that, in view of Mr. Conradi's thorough knowledge of the stairway, it should be held that his own negligence contributed to his fall, and that respondents were not liable for other matters of which appellant complains. The court then stated that the action would be dismissed.

After finding that appellant was the administratrix of the estate of her late husband, and that respondents were the owners and operators of the apartment house in question, the trial court entered finding No. 2, which reads as follows:

"That located on the third floor of the apartment building of the defendants is a certain apartment which the plaintiff Ida Mae Conradi and her husband, William E. Conradi, occupied under a month-to-month tenancy from April 18, 1947, to January 15, 1948; that from the second floor of the apartment building a stairway extends 16 steps upward to a door which provides the sole means of ingress and egress to the apartment rented by the plaintiff and her husband; that this stairway was maintained for the sole use of and used solely by the tenants in the said third-floor apartment and their visitors, and constituted a necessary and sole approach to the premises."

By finding No. 3, the court established the facts concerning the floor of the apartment to the outside edge thereof, the operation of the door as above set forth, and that

". . . the condition of the floor of the said apartment hallway was exactly the same and had not changed in any

way from April 18, 1947, to October 7, 1947; that the said William E. Conradi was fully familiar with the condition of the hallway, including the rug or strip carpet, the bare floor and the condition thereof."

Findings Nos. 4 and 5 read as follows:

"(4) That on the 7th day of October, 1947, at about 6:05 to 6:10 a. m. William E. Conradi, while about to leave the apartment to proceed on his way to work, was standing within the hallway in his apartment, with the door to the stairway open, and at a point near the edge of that part of the hall floor nearest the stairway, when as a result of his own negligence he slipped and fell to the bottom of the stairway, resulting in certain injuries to him; that the hallway, doorway and stairway were then dark and in order to illuminate the same it was necessary for William E. Conradi to turn to his right to reach the electric switch on the wall and the stairway just outside the doorway leading into the apartment hall; that the said William E. Conradi did so turn and reach for said switch and in so doing he fell to the bottom of the stairway.

"(5) That the proximate cause of the fall of the said William E. Conradi and the injuries resulting therefrom was his own contributory negligence; that he was negligent in failing to take heed of the bare floor of the hallway on which he slipped, thereby causing his fall."

The court then continued by finding the service by respondents upon Mr. and Mrs. Conradi of the notices to vacate the apartment, and other circumstances in connection with those notices, this finding concluding as follows:

". . . that in connection with said move the said William E. Conradi elected to and did lift certain boxes containing household goods and a heavy tool chest."

Finding No. 7 reads as follows:

"That thereafter on January 23, 1948, William E. Conradi died from acute cardiac failure; that there is no evidence that any negligent or unlawful act on the part of the defendants was a proximate cause of his death, but that a proximate and contributing cause of his death was his fall down the stairs on October 7, 1947."

From the findings entered, the trial court concluded "That the defendants were guilty of no negligent or unlawful act

which was a proximate cause of the death of William E. Conradi on January 23, 1948," and that the action should be dismissed with prejudice.

The court then signed the judgment dismissing the action, from which this appeal is prosecuted.

The autopsy performed after Mr. Conradi's death indicated that for some time he had suffered from a bad heart condition. It nowhere appears that Mr. Conradi had any knowledge of the fact that he was suffering from any such affliction, and there can be no question but that his death was the result of acute cardiac failure. Of course, his fall would tend to render this condition more serious, and undoubtedly his strenuous physical exertions in moving from the apartment to a new location would be injurious, in view of his unfortunate cardiac condition. It is not denied that, during the moving operation, Mr. Conradi worked hard and moved heavy objects, including a tool chest. It does not appear that he could not have obtained any desired assistance in moving, but evidently he voluntarily assumed this burden.

The findings of the trial court in an action at law are presumed to be correct and, on appeal, will be approved by this court unless we find that they are against the weight of the evidence. *Wade v. Bartek*, 30 Wn. (2d) 483, 191 P. (2d) 701; *Graham v. Roderick*, 32 Wn. (2d) 427, 202 P. (2d) 253; *Fountain v. Parnell*, 32 Wn. (2d) 599, 202 P. (2d) 918.

Having lived in the apartment for several months, Mr. Conradi was, of course, thoroughly familiar with the condition of the floor of the apartment, the door leading therefrom, the stairway to the second floor, and the lights available for illuminating those areas. It does not appear that the fact that the upper handrail was somewhat loose anywise contributed to Mr. Conradi's fall.

Appellant makes much of the evidence introduced on her behalf to the effect that, after Mr. Conradi's fall, the narrow board at the edge of the apartment floor was somewhat reduced in width and rendered firm in its position, but this

would not change the situation with which Mr. Conradi was perfectly familiar prior to his accident. Mr. and Mrs. Conradi accepted the apartment and the means of ingress and egress in connection therewith, and, although they did complain of inadequate heat and electricity, it does not appear that their complaints extended to any floor condition. Appellant testified that she had slipped on the floor and had so advised her husband. Her daughter, Mrs. Long, and the latter's husband, testified that they had noticed that the floor was slippery. Miss Anna Steendahl, a high school teacher and a friend of the Conradis, called as a witness on appellant's behalf, testified that the apartment floor was slippery. From the evidence, it appears that appellant cleaned the floor of the apartment up to the door.

Respondent Grant Arnold testified that there had been no structural changes made in connection with apartment No. 9 since 1925. Respondents Arnold both testified that the portion of the floor of the apartment which projected beyond the door was never polished by them during appellant's tenancy (as above stated, appellant testified to the contrary), and that the apartment and the stairway remained in exactly the same condition at all times after appellant and her husband took possession.

All conditions concerning apartment No. 9 and the staircase leading thereto from the second floor were open and apparent. It is not contended that respondents made any agreement with Mr. and Mrs. Conradi to alter or repair any portion of the demised premises or that respondents were requested to do so. It nowhere appears that there was any concealment on the part of respondents of the existing conditions. Inconvenient as the exit from the apartment was, the situation was at all times open and apparent, and thoroughly understood by the tenants. Respondents denied that the edge of the floor projecting beyond the door was loose, but, in any event, there is no evidence to the effect that the Conradis ever requested that any change or repair be made.

■ The general rule is stated in 2 Restatement of the Law of Torts 967, § 356, as follows:

"Except as stated in §§ 357 to 362, a lessor of land is not liable for bodily harm caused to his lessee or others upon the land with the consent of the lessee or a sub-lessee by any dangerous condition whether natural or artificial which existed when the lessee took possession."

In 32 Am. Jur. 515, § 654, appears the following:

"A lessee takes the hired premises, in the absence of warranty, fraud, or misrepresentation, in the condition and quality in which they are. The tenant takes the property as he finds it, with all existing defects which he knows or can ascertain by reasonable inspection. He takes the risk of apparent defects. As between himself and his landlord, where there is no fraud or false representation or deceit, and in the absence of an express warranty or covenant to repair, there is no implied contract that the premises are suitable or fit for occupation, or for the particular use intended, or that they are safe for use. Any implied contract relates only to the estate, and not to the condition, of the property. In other words, in the absence of fraud or concealment on the part of the landlord, a rule similar to that of caveat emptor applies and throws upon the lessee the responsibility of examining as to the existence of defects in the premises and of providing against their ill effects."

In 16 R. C. L. 1030, § 552, the text states that, under the common law, it is well settled that the landlord is under no obligation "in the absence of a covenant to that effect, to repair the demised premises, even where they become defective through decay or deterioration." At p. 1034, § 555, it is stated that "a landlord not under contract to repair is not responsible to the tenant for injuries to person or property caused by defects in the rented premises." See, also, 52 C. J. S. 12, § 417.

In 1 Tiffany Real Property (3rd ed.) 158, § 104, the rule is stated as follows:

"Since the tenant is bound to inspect beforehand, and is subject to the rule of caveat emptor, and the landlord owes no duty to repair, the latter is, in general, not liable for injuries to the tenant or his property resulting from the construction or condition of the demised premises."

This rule is, of course, subject to certain exceptions in connection with hidden defects or acts of a landlord after the initiation of the tenancy.

In the case of *Moore v. Weber* (1872), 71 Pa. St. 429, in reversing a judgment for the plaintiff, the court held that

"In the absence of an express agreement there is no implied obligation on the landlord to repair demised premises, . . . The rule here, as in other cases, is *caveat emptor*. The lessee's eyes are his bargain. He is bound to examine the premises he rents, and secure himself by covenants, to repair and rebuild."

This case has been frequently cited and followed by courts of other jurisdictions.

In the case of *Brown v. Dwight Manufacturing Co.*, 200 Ala. 376, 76 So. 292, the court quoted from the case of *Moore v. Weber, supra*, and held that the landlord was under no obligation to keep demised premises in repair, in the absence of an agreement to do so.

The case last cited was followed by the court of appeals of Alabama in *Lusco v. Jackson*, 27 Ala. App. 531, 175 So. 566.

The supreme judicial court of Massachusetts, in the case of *Pittsley v. Acushnet Saw Mills Co.*, 299 Mass. 252, 12 N. E. (2d) 823, an action by an administratrix of the estate of a deceased person, who had suffered death as the result of an accident on leased premises, held that the landlord was not liable for damages resulting from an accident caused by a hidden defect in the demised premises, there having been "no express or implied warranty by the defendant that the premises were free from defects, nor did it misrepresent the condition of the premises."

In *Breazeale v. Chicago Title & Trust Co.*, 293 Ill. App. 269, 12 N. E. (2d) 217, the court held that a landlord was not responsible to his tenant for injuries suffered from a fall caused by the tenant's foot catching in an open seam in the carpet in a leased apartment. In the course of the opinion, the court said:

"The general rule is that where the right of possession and enjoyment of leased premises passes to the lessee, in

the absence of concealment or fraud by the landlord as to some defect known to him and unknown to the tenant, the tenant assumes all risk of personal injury from defects, and the fact that the lessor covenants to repair does not affect this rule so far as concerns the lessor's liability for personal injuries to the lessee due to defects, although their existence is attributable to the failure of the lessor to repair."

This court has several times considered questions concerning the liability of a landlord for injuries to a tenant, occasioned by defects in the leased premises.

In the early case of *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N.S.) 917, in an opinion by Ellis, J., many authorities are considered. A judgment entered against the landlord upon the verdict of a jury was affirmed. One paragraph of the opinion reads as follows (p. 446):

"It is a general principle that, in the absence of express contract to the contrary, a tenant takes the demised premises as he finds them and there is no implied warranty by the landlord that they are safe or fit for the purpose for which they are hired. The maxim *caveat emptor* applies."

In *Larson v. Eldridge*, 153 Wash. 23, 279 Pac. 120, a judgment in favor of the plaintiff, a subtenant of the defendant's tenant, for damages suffered by the plaintiff because of the breaking of a balcony railing was reversed, the court relying upon the foregoing quotation from the opinion in *Mesher v. Osborne*, *supra*, and holding that no obligation rested upon the landlord and that the landlord was not liable for damages resulting from the breaking of the defective railing.

In the case of *Miller v. Vance Lumber Co.*, 167 Wash. 348, 9 P. (2d) 351, this court also reversed a judgment rendered in favor of the plaintiff tenants, in an action for damages based upon personal injuries suffered by one of the plaintiffs because of faulty plaster on the ceiling of one room of a rented apartment.

Somewhat similar questions were considered in the case of *Peterson v. Betts*, 24 Wn. (2d) 376, 165 P. (2d) 95, in which this court, sitting *En Banc*, after citing many authori-

ties, reversed a judgment in favor of the plaintiff, entered pursuant to the verdict of a jury, in an action by a tenant against his landlord for personal injuries suffered by the tenant upon the demised premises.

The cases of *Baker v. Moeller,* 52 Wash. 605, 101 Pac. 231, *Polk v. Spokane Interstate Fair,* 73 Wash. 610, 132 Pac. 401, *Hogan v. Metropolitan Building Co.,* 120 Wash. 82, 206 Pac. 959, *Viles v. Thunborg,* 164 Wash. 190, 2 P. (2d) 666, and *Dodak v. Lewis,* 187 Wash. 138, 59 P. (2d) 1121, are also in point.

Appellant relies upon the opinion of this court in the case of *Andrews v. McCutcheon,* 17 Wn. (2d) 340, 135 P. (2d) 459, in which a judgment in favor of the plaintiff wife, on account of injuries suffered by her as the result of a fall down a flight of stairs in a shoe store in the possession and under the control of the defendant, was affirmed. The jury found that the defendant retained control over the stairway in question and failed to keep it in a reasonably safe condition for use by invitees. The evidence introduced was sufficient to support the jury's finding of negligence on the part of the defendant in maintaining the staircase. The case is not here in point.

Under the evidence in the case at bar, the staircase from the third floor to the second was appurtenant to the apartment, being exclusively for the use of tenants of the apartment and their guests. The treads of the staircase were carpeted, there was a bannister, and, apparently, the staircase itself was free from dangerous elements. Appellant contends that Mr. Conradi's accident was the result of the situation existing in the apartment and the connection of the apartment floor with the stairway. The center of the first stair tread below the apartment floor was covered by the stair carpet, which, apparently, was in good condition.

Even though respondents assumed the burden of sweeping and cleaning the flight of stairs, the stairway was, nevertheless, entirely appurtenant to apartment No. 9, and, as above stated, Mr. Conradi's fall was not the result of any condition on the stairway below the floor of the apartment.

It does not appear that the Conradis ever requested or suggested any change in the operation of the light which illuminated the stairway. It would seem that it would have been a very simple matter to have arranged for the turning on and off of that light from within the apartment, by attaching a switch and cord to the light socket, but, apparently, no such suggestion was ever made.

Appellant herself cleaned and polished the uncarpeted portion of the floor within the apartment and must also have cleaned the portion of the floor under the door. She testified that respondents cleaned or polished the two-inch strip outside of the door.

The entire situation, with all of its inconveniences and dangers, was at all times open and apparent, and Mr. and Mrs. Conradi rented the apartment and used the same for the period stated. If the outer strip of the floor was loose, it does not appear that respondents knew of that fact and it is not contended that their attention was ever called to the situation.

■ Appellant could recover judgment against respondents only if they were in some way negligent and Mr. Conradi was not contributively negligent. No negligence on the part of respondents is affirmatively shown by the record before us.

The trial court patiently listened to the evidence, admitting practically all of the testimony offered by appellant and reserving its rulings upon the competency and materiality of the portions of the testimony to which respondents objected. The court then, at appellant's request, made a personal examination of the apartment and, from that examination, acquired knowledge of the situation which we do not have.

The trial court then found that Mr. Conradi's injuries resulted from his own contributory negligence, and that no negligent or unlawful act on the part of respondents was a proximate cause of Mr. Conradi's death.

The statement of facts closes with the trial court's oral

summation of the evidence and the statement that the case would be dismissed "for want of proof."

The record does not disclose that appellant submitted any proposed findings, or requested any particular finding which the court refused.

Appellant pleaded, by title, ordinance No. 72200 (the building ordinance) of the city of Seattle, as amended. Sections 20 (providing a penalty), 604, and 611 of the ordinance were read into the record.

Section 604 refers to the surface material of stair treads, appellant contending that the ordinance had been violated because the top step of the stairway was "waxed and greased." The court made no finding upon this matter. By "top step," appellant undoubtedly referred to the floor of the apartment, as the first step of the stairway proper was covered with stair carpet. There is no question but that the floor of the apartment was cleaned and polished by appellant herself.

Section 605 of the ordinance requires that apartment doors open on landings. No violation of this section of the ordinance was pleaded, and the court made no finding of fact thereon. Respondent Grant Arnold testified that no structural change in the apartment had been made since 1925. The question of whether the ordinance was applicable to the situation was not argued, and the court made no finding of fact in connection therewith.

Section 611 of the ordinance provides for adequate lighting of stairways, and was read into the record. The trial court found that, at the time Mr. Conradi fell, the staircase was not lighted. Of course, Mr. Conradi fell during his attempt to turn on the light. The light was available, and, under all the circumstances of this case, the ordinance is inapplicable.

Appellant also pleaded, by title, city ordinance No. 39104, as amended, which requires the heating of occupied apartments, and so forth. No violation of this ordinance was pleaded in the complaint, and the ordinance is not applicable to the situation disclosed by the record. Appellant

testified that the apartment was not comfortably warm and that Mr. Conradi caught a cold, but in view of the evidence in the record, the fact that Mr. Conradi had a cold is not pertinent.

Examination of the evidence convinces us that Mr. and Mrs. Conradi leased the apartment as it was, and that they occupied it for the period above referred to, with full knowledge of the situation, which, appellant now contends, resulted in liability on the part of respondents for her husband's death.

It must be held, as a matter of law, that the record before us discloses no evidence that Mr. Conradi's fall was due to any negligent act or omission on the part of respondents, and the judgment appealed from is, accordingly, affirmed.

JEFFERS, STEINERT, MALLERY, and HILL, JJ., concur.